| | |
|---|---|
| 52 | 169 |
| 53 | 286 |
| 52 | 169 |
| 55 | 318 |
| 52 | 169 |
| 56 | 383 |
| 52 | 169 |
| 58 | 288 |
| 52 | 169 |
| 62 | 13 |
| f62 | 396 |
| 52 | 169 |
| a63 | 280 |
| a63 | 281 |
| 52 | 169 |
| e67 | 276 |
| 52 | 169 |
| e68 | 190 |
| 52 | 169 |
| 66E | 399 |

THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, PLAINTIFF IN ERROR, v. EMMA TRAUTWEIN, DEFENDANT IN ERROR.

1. The duty of common carriers with respect to the transportation of persons or property is a duty independent of contract, arising by implication of law from the fact that persons or property are received in the course of the business of such employments.

2. The plaintiff, a passenger on the defendant's railway train, received an injury in leaving the depot grounds at the place of her destination, through the defendant's negligence. In a suit to recover damages for this injury—*Held*, that the fact that the plaintiff was traveling on Sunday, in violation of the act concerning vice and immorality (*Rev.*, p. 1227), did not preclude her from maintaining the action.

3. The duty of a railroad company as a carrier of passengers does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means of access to and from its stations for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe.

4. At the station at which the plaintiff alighted from the cars the track was upon an embankment above the public road, over which the railroad was carried by a bridge. The company had a depot building for passengers on the north side, on a level with the track, at the end of which there were steps, for the accommodation of passengers, leading down to the public road. On the other side of the track there was another stairway resting on the embankment of the railroad, and on the company's grounds, leading also to the street. This stairway was built and kept in repair by private persons residing in the neighborhood, for their own convenience, as a means of access to and from the station. This stairway had been in use by passengers generally. In use as well as appearance this passageway appeared to have been provided as a means of access to and from the depot grounds. The train reached the depot at 9:35 on a dark and stormy night. There were no lights in the depot, and no person there to direct passengers the way to leave the depot grounds. The plaintiff, in endeavoring to go to this stairway for the purpose of getting to the public road, fell over some timbers and was injured. *Held*, (1) that the way of passage taken by the plaintiff being there by the recognition and assent of the company, and held out by it as one of the passageways for the entrance and exit of passengers to the public street, the plaintiff was justified in using it. As between a passenger injured in using the passageway it is immaterial at whose expense the stairway was built and kept in repair. (2) That the company was not absolved from the duty to keep this passageway reasonably safe by the fact that it had provided another passageway which the plaintiff might have taken.

On error to the Supreme Court.

For the plaintiffs in error, *Bedle, Muirheid & Magie.*

*Contra, Leon Abbett* and *William F. Abbett.*

The opinion of the court was delivered by

DEPUE, J.   Emma Trautwein, the defendant in error, on Sunday, the 11th of September, 1887, was a passenger on a train of the Delaware, Lackawanna and Western Railroad Company from New York city to Lyndhurst, New Jersey. She took passage in the company's train, leaving New York at nine o'clock in the evening, and reached Lyndhurst about nine thirty-five P. M.   She alighted from the train, and in leaving the station to reach the street fell over some railroad ties and received injuries for which this suit was brought. On a verdict for the plaintiff below, and judgment thereon, this writ of error was brought, and errors assigned upon the rulings of the trial judge.

The act concerning vice and immorality provides that no traveling, worldly employment or business, ordinary or servile labor or work, either upon land or water (works of necessity and charity excepted), shall be done, performed or practiced by any person or persons within this state on Sunday.   The penalty prescribed for violating this statute is the forfeiture of $1 for every such offence, to be recovered upon conviction and paid for the use of the poor of the township in which the offence was committed.   *Rev., p.* 1227, § 1.   The section contains a proviso that it should be lawful for any railroad company in the state to run one passenger train each way over its road on Sunday for the accommodation of the citizens of the state.   This proviso has the effect, not only to give to the company a right to run the specified trains on Sunday, but also confers the right upon the citizen to use such trains for ordinary travel.   *Smith* v. *New York, Susquehanna and Western R. R. Co.,* 17 *Vroom* 7.   As between the company and a passenger on its train, it would seem that the latter would have the right to assume that the train on which he is

received as a passenger is the train run under the protection of the proviso, whatever effect the duplication of trains might have in subjecting the company to the penalty. There is also some evidence that the purpose of the plaintiff in going to New York on that day was to obtain from a physician a prescription and get medicine for her mother, a purpose that would probably exempt the plaintiff from the penalty prescribed by the act. But an instruction to the jury put on record in the bill of exceptions, put the plaintiff's case on a broader ground. The trial judge assumed that the company was running this train in violation of the statute, and that the plaintiff was also traveling in violation of the statute, and instructed the jury that these circumstances did not debar the plaintiff of her right to recover. If this proposition be sound, it will not be necessary to consider the rulings of the trial judge in construing the proviso, and with respect to the purpose of the plaintiff's journey on that day or her right to recover.

In Massachusetts, Maine and Vermont, it has been held adversely to the legal proposition adopted by the trial judge. In the federal courts, and in the courts of other sister states, the decisions have been in accordance with the ruling of the trial judge.

A contract to carry, made on Sunday, or to be performed on Sunday, is, by force of the statute, illegal and void. No action could be maintained for the breach of such a contract, nor for services performed under it, where the right of action rests exclusively upon a contract, express or implied. *Reeves* v. *Butcher*, 2 *Vroom* 224. It is, also, clear, that a plaintiff will fail where, to make a cause of action, he is compelled to rely upon an illegal contract. But the duty of persons engaged in these public employments to safely and securely carry is independent of contract. It is a duty imposed by law from considerations of public policy, and arises from the fact that persons or property are received in the course of the business of such employments. *Marshall* v. *York, Newcastle and Berwick R. R. Co.*, 11 *C. B.* 655; *Martin* v. *Great Indian R. R.*

*Co., L. R.*, 3 *Exch.* 9; *Gladwell* v. *Steggall*, 5 *Bing.* (*N. C.*) 733; *Pippin* v. *Sheppard*, 11 *Price* 400; *Carroll* v. *Staten Island R. R. Co.*, 58 *N. Y.* 126. In *Austin* v. *Great Western R. R. Co., L. R.*, 2 *Q. B.* 442, a suit was brought against a railroad company by a child three years and two months old. The plaintiff's mother, carrying the plaintiff in her arms, took a ticket for herself, but not for the child, for passage on the defendants' railway. In the course of the journey an accident happened, and the plaintiff's leg was broken. In a suit for this injury, the defendants contended that they were under no contract with the plaintiff, and that they carried the plaintiff without any hire or fare paid for carrying him. The action was held to be maintainable. Blackburn, Justice, said that "the right which a passenger by railway has to be carried safely does not depend on his having made a contract, but the fact of his being a passenger casts a duty on the company to carry him safely." The English cases to this effect are cited and commented on in *Foulkes* v. *Met. Dist. R. R. Co.*, 5 *C. P. Div.* 157, 169. The rule may be considered as settled, that a railroad company, having accepted a passenger, is under an obligation to take due and reasonable care for his safety, and that that obligation arises by implication of law independent of contract. To give the plaintiff a standing in court to sue for the injury, she has no need of the aid of a contract which was illegal.

Nor was the plaintiff's violation of the Sunday law, in a legal sense, the cause of her injury. It was only the occasion for an injury by the defendant's wrongful act, and hence her wrong-doing did not contribute to the injury in such a sense as to deprive her of her right of action; it was merely a condition, and not a contributory cause of the injury. Thus, in *White* v. *Lang*, 128 *Mass.* 598, it was held that if a person, while unlawfully traveling on Sunday, is injured by the assault of a dog, the act of traveling was not a contributory cause of the injury, and that he could, notwithstanding his own violation of the law, maintain his action against the owner of the dog. In sustaining the suit, the court said:

"If a person, who is at the time acting in violation of law, receives an injury caused by the wrongful or negligent duty of another, he may recover therefor if his own illegal act was merely a condition, and not a contributory cause of the injury. * * * It is true, that if he were not traveling he would not have received the injury, but the act of traveling is a condition, and not a contributory cause of the injury."

The ninety-second section of the Road act (*Rev., p.* 1012) provides that all wagons and other wheel carriages of every kind or description, traveling or passing on the highways within this state, belonging to residents therein, shall track on the ground not less than four feet and ten inches, under the penalty of $5 for each offence, to be recovered, one moiety of which is to be paid to the overseer of the highways and the other to the informer. The penalty in this statute, like that in the Sunday law, is prescribed for the purpose of prohibition, and not revenue, and a citizen traveling a public highway with a wagon of a narrower track than that named in the statute is engaged in violating the law. In some parts of this state the use of pleasure and business wagons of the New York gauge, which is narrower than that of our statute, is quite common. In collision cases on public highways, or at railroad crossings, the defence that plaintiff is debarred of his action on the ground of contributory negligence, for the reason that the wagon which he was driving did not conform to the statutory gauge, has never occurred to counsel, who are usually astute in discovering grounds of defence under the doctrine of contributory negligence. In my experience it has never been thought worth while to inquire in such cases as to the track of the wagon injured or destroyed in such a collision, and a defence on that ground would obviously receive no consideration.

The cases sustaining the ruling of the trial judge on this head are numerous. They are cited and approved by leading text-writers in discussing this subject. *Bish. Non-Cont.,* §§ 63, 64; 2 *Wood Railw.,* § 318; *Beach Con. Neg.,* § 81; *Cooley Torts* (2d *ed.*) 178 (155) *et seq.* and notes. On principle, as

well as by the weight of authority, the ruling of the trial judge was correct.

The station at which this accident happened was located upon an embankment elevated above the public road, which crosses the railroad under a bridge carrying the railroad over the public road. The company had a depot building for the reception of passengers on a level with the track on the north side of its track. At the west end of this building there were steps, for the accommodation of passengers, leading down to the public road. On the south side of the embankment there was a stairway, leading also to the public road, built by private persons residing in that neighborhood for their own convenience, and used by passengers as means of access to and from the station. The company did not construct or keep this stairway in repair. The stairway rested against the embankment of the railroad; it was on the company's grounds and led to the public street. From the depot building to the top of this stairway there was a gravel walk, and the employes of the company testified that the passage was kept free and opened and unobstructed. It was, apparently, a way provided as a means of access to and from the company's depot grounds.

On the occasion when the plaintiff received her injury, the train reached the station at nine thirty-five. The night was dark and stormy. There is no light in or about the depot building, and no person there to direct passengers as to the way to leave the depot grounds. The plaintiff, in crossing the tracks on her way to the stairway, fell over some timber and received the injury for which she sues. The plaintiff testified that the only time she was at that depot before that night she used this stairway, and that she knew of no other passage to or from the depot.

The judge submitted to the jury the question whether the plaintiff was justified in using this way out from the depot, in this language: "Did the plaintiff do right in taking this way out? That depends upon the question, Whether this way of passage was there by the recognition, procurement or assent

of the company as a means for the entrance and exit of passengers. Proof of such approval by the company, or of its recognition, need not be made by any resolution or declaration of the company, or of its agents. If, to persons of ordinary understanding and discernment, it appeared to be such a way, and by the company it was allowed to remain and be in use by passengers going to or from trains, any one going to and from a train as a passenger was authorized to make use of it. If the company permitted it to be done openly, so that persons of reasonable judgment and discernment would conclude it to be a means of entrance and exit, then any passenger was authorized to take it and use it. It is submitted to you as a question of fact, whether, to an ordinary observer, this was held out as one of the passageways from the depot to the public street. If so, any passenger, unwarned, might use it as such. If you should so find, it is entirely immaterial who built the stairway or who kept it in repair."

The duty of a railroad company as a carrier of passengers does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe. If there be two ways, one of which is faulty in construction or repair, a passenger using it and injured by its faulty condition will not be debarred of his action, although the other which he might have used was safer. *Longmore* v. *Great Western R. R. Co.*, 19 *C. B.*, *N. S.*, 183. A company having provided one safe and convenient way of ingress and egress to and from its station may, as contended for by the company's counsel, suffer private persons for their own convenience to have and use another way of access across its depot grounds, and it may be that those who use such a way will do so at their peril if they have notice of the private character of the way. But that is not this case. The passageway taken by the plaintiff led to the public street, and had every indication of having been provided for use by the public, as a way to and from the station. Under the

charge of the court and the finding of the jury, it must be taken to be the fact that this way of passage was there by recognition, procurement or consent of the company, and that by sufferance and use it had obtained such an appearance of a passageway passengers were invited to use, and that persons of reasonable judgment and discernment would conclude it to be a means of entrance and egress. It was of a passageway having these characteristics that the judge said that it was immaterial who built the stairway or who kept it in repair.

In *Beard* v. *The Connecticut and Pass. Rivers R. R. Co.*, 48 *Vt.* 101, *S. C., Am. Ry. Rep.* 375, there was a stairway for passengers through the company's depot building, and also a stairway at each end of the passenger platform. The stairway at the north end was opened at the top, and there was nothing to indicate that it was not for the use of passengers. In fact, that stairway was built by an express company, and was used exclusively by the express company for removing express freight, and opened into the street, over a platform for loading and unloading express wagons. The plaintiff, a passenger, in attempting to pass down the stairway in the dark, fell and was injured. For this injury she sued the railroad company. The defendant's counsel requested the trial judge to charge the jury that the plaintiff could not recover unless she showed that the lower platform, in stepping from which she was injured, was on the defendant's premises. The court declined to so instruct the jury, but told the jury that the plaintiff, to recover, must establish that the company was guilty of negligence in leaving the stairway where it left the upper platform open and without any guard or notice to warn passengers that the stairway was not to be used as a way of passage to the street below, and that she was injured by such negligence or want of care on the part of the defendant without any neglect or want of care on her part contributing to the injury. This instruction was held to be correct. The court, in sustaining the instructions of the trial judge, speaking of the likelihood of a stranger to regard that stairway as designed to furnish a safe way of getting to the street, said : " If not so designed, and

it was unsafe to a stranger for such a purpose in the darkness, it was the duty of the defendant to forefend against injury by closing up the head of the stairs, or by notifying in some effectual way against using those stairs for getting to the street. * * * In view of the unquestionable law, the request to which the exception was taken seems frivolous. The open stairs on the margin of the platform led the plaintiff, without fault on her part, to the point of harm. * * * The fact that the bottom of the pitfall on which the plaintiff landed, and thereby received hurt, was beyond the line of ownership of the defendant, neither relieved the duty nor mitigated the fault of the defendant."

In the case in hand contributory negligence by the plaintiff was negatived by the jury. The case is here solely on the use of the passageway by the plaintiff and the duty of the company with regard to its condition and safety. We think the instruction of the trial judge on that subject was correct. A passageway having the characteristics mentioned by the judge became, by the company's act, a passageway which passengers were invited to use, with respect to which the company was under a duty to have it kept reasonably safe for use. A passenger using the way under such an invitation was not bound to inquire by whose contributions the stairway was erected or maintained. Nor was the company absolved from its duty in the premises by the fact that it erected and maintained at its own expense another way of exit.

The other exceptions on the record have been examined. We find no error in the conduct of the trial, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, GARRISON, MAGIE, VAN SYCKEL, BROWN, COLE, SMITH, WHITAKER. 10.

*For reversal*—None.