24 N.J. Super. 413 (1953)
94 A.2d 685
CELIA HORELICK AND DAVID HORELICK, PLAINTIFFS-RESPONDENTS,
v.
THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1953.
Decided February 5, 1953.
*415 Before Judges EASTWOOD, BIGELOW and JAYNE.
Mr. Archie Elkins argued the cause for the plaintiffs-respondents.
Mr. William E. Bardusch, Jr., argued the cause for the defendant-appellant (Messrs. O'Mara, Schumann, Davis & Lynch, attorneys; Mr. Gerald F. O'Mara, of counsel).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The question raised by this appeal is whether the railroad, by inviting the plaintiff to use the station facilities of the Washington Union Terminal for egress, is liable for injuries occurring beyond the point where the passenger disentrained.
The undisputed facts are: On December 22, 1951, Celia Horelick purchased a railroad ticket for transportation to *416 Washington, D.C. upon defendant's line and boarded the train in New York City. Plaintiff detrained from defendant's train upon its arrival at Union Station, Washington, D.C., and had walked the length of several passenger cars along the platform toward the exit when she slipped upon a piece of ice on the platform which was obscured by dirt accumulated thereon, and fell, injuring herself.
Plaintiffs alleged that defendant, through its agents, servants and employees, was negligent in its duty to provide Mrs. Horelick with a safe exit and that her injuries and damages were caused thereby.
Defendant admitted being a common carrier; that it carried Mrs. Horelick as a fare-paying passenger from New York to Washington, but denies ownership or control of the platform at the Washington, D.C. station, asserting that its line terminates at Florida Avenue in the District of Columbia, and that while its train continues south into the Union Terminal, it is under the jurisdiction and control of Washington Terminal Railroad Company.
Defendant further argued that on the ticket purchased by the plaintiff it was stated that it was "subject to Tariff Regulations" and that the act provides, in part, that the carrier issuing the ticket is not responsible beyond their own lines, except as may be imposed by law with respect to baggage.
The defendant contends that the tariff specifically limited its responsibility to its own lines and that in selling plaintiff a ticket containing reference thereto, the plaintiff agreed to the limitation contained therein. Section 2, paragraph 18, of the tariff, ICC No. A-17442, provides, inter alia:
"Responsibility: In issuing tickets and checking baggage under this tariff for passage over the lines of the carriers herein, the issuing carriers act only as agents and are not responsible beyond their own lines, except as such responsibility may be imposed by law with respect to baggage."
Defendant further contends that it owed no duty to Celia Horelick at the time and place of the accident and that the *417 trial court erroneously applied the principles of the case of Del., L. & W.R.R. Co. v. Trautwein, 52 N.J.L. 169 (E. & A. 1889), and failed to be governed by the case of Bright v. Pennsylvania R.R. Co., 69 Pa. Super. 188 (Pa. Sup. Ct. 1918).
The generally accepted rule is that
"A common carrier of passengers is under a duty to provide adequate station accommodations and proper safeguards at those places where it takes on and puts off passengers, and to keep its stations in a safe condition; its failure to perform its duty in this respect will render it liable to those who enter upon the premises, in response to an implied invitation, and suffer injury as a result of such neglect." 10 Am. Jur., Carriers, sec. 1281, p. 188.
Further, at sec. 1288, pp. 190-191, 10 Am. Jur., Carriers, supra, it is stated:
"With respect to the liability of a common carrier of passengers for injuries caused by defective premises not owned or controlled by the carrier, the general principle has often been applied that one who, although not strictly in control of a defective agency or dangerous place, uses it for his own benefit or for his own purposes and invites another to make use of the same may be held liable to the latter for an injury caused by the defect or danger. To illustrate, a railroad company is not relieved from liability for injury to its passengers by reason of the unsafe condition of the depot premises which the passenger must use to get to the trains merely because of the fact that the premises are used by, and are under the control of, a union depot company with whom the railroad contracts for terminal facilities. Similarly, where a platform maintained jointly by two railroads for the purpose of enabling passengers to pass from the depot of one of the companies to that of the other is negligently left in an unsafe condition, both companies are liable to a passenger for injuries sustained while passing over such platform."
The application of this rule to a carrier in use of union terminal facilities under another's control is recognized in 13 C.J.S., Carriers, § 708, p. 1322.
We consider it to be a principle of general acceptance, requiring no citation, that it is the relationship of carrier and passenger which gives rise to the carrier's duty to use reasonable care and caution for his safety. As stated *418 by the Court of Errors and Appeals in Del., L. & W.R.R. Co. v. Trautwein, supra, at p. 175:
"The duty of a railroad company as a carrier of passengers does not end when the passenger is safely carried to the place of his destination. The company must also provide safe means for access to and from its station for the use of passengers, and passengers have a right to assume that the means of access provided are reasonably safe."
Cf. 10 Am. Jur., Carriers, sec. 1296, p. 193.
Having considered the carrier's obligation to furnish the passenger with a safe means of ingress and egress of its train and its liability for injuries resulting from a failure to adequately provide reasonably safe means of ingress and egress from the train, whether it be a facility owned and controlled by the carrier itself or one used under contract or in cooperation with another, we find a continual duty by the carrier to its passenger arising from that relationship with the passenger which transcends agreements between carriers and terminal companies which have arisen out of economics, convenience or the like.
It is stated in 13 C.J.S., supra, § 701, p. 1312:
"* * * A person or corporation that holds himself or itself out as the operator of a vehicle of carriage may not, under certain circumstances at least, be entitled to deny liability for an injury to a passenger by showing that the driver is an independent contractor or that he is not the agent of such person or corporation. So the fact that another corporation actually manages a railroad station does not relieve the carrier, whom it is sought to charge, of responsibility to passengers who are using the station facilities at such carrier's invitation.
A carrier using a platform or station constructed or controlled by another owes the duty to its passengers of keeping and maintaining it in a reasonably safe condition, and becomes liable for failure to perform this duty."
Cf. Little v. Dusenberry, 46 N.J.L. 614 (E. & A. 1884).
By its very nature a carrier must receive and discharge passengers, and in so doing it must exercise reasonable care and caution to insure the safety of its passengers through *419 the facilities of entry or departure. It is not within the province of the individual passenger to elect the point at which he will entrain or detrain. This is a selection within the province of the carrier-company, and in so selecting that spot it must use the requisite precautions for the safety of its passengers until they have cleared the facilities for entry or exit to the train. This is an obligation which arises out of the relationship of the parties, and the facilities of entry and exit have included not only those connected with the vehicles of conveyance but those incident to the sale of vehicular transportation, the comfort of patrons, and the approaches to the carrier's vehicles. The duty of a carrier obtains not only while the passenger is in travel, but while they sustain the relationship of passengers or prospective or intended passengers and are performing acts reasonably and fairly attributable to that relationship. Texas & P.R. Co. v. Stewart, 228 U.S. 357, 33 S.Ct. 548, 57 L.Ed. 875, 33 S.Ct. 548 (1913); Galloway v. Chicago, M. & St. P.R. Co., 56 Minn. 346, 57 N.W. 1058, 23 L.R.A. 442, 45 Am. St. Rep. 468 (Sup. Ct. 1894).
Our Court of Errors and Appeals stated in Spofford v. Central R.R. Co., 89 N.J.L. 273 (1916):
"The relation of carrier and passenger, when established, does not terminate until the passenger has reached his destination and alighted from the train upon which he has been riding, and has had a reasonable time and opportunity within which to leave the place where the passengers are discharged. Delaware, Lackawanna and Western Railroad Co. v. Trautwein, 52 N.J.L. 169.
Consequently it is the duty of a railroad company to use reasonable care to provide its passengers a safe place and way to alight at the place of destination, and the company is liable for an accident happening by reason of the neglect of such duty, to a passenger who has alighted from a car at rest in a station, and before he has had a reasonable time and opportunity to leave the premises of the company, if the circumstances are such as to induce the passenger to believe that it was safe for him to alight at the place and in the way he did." (and cases cited)
The Court of Errors and Appeals in Bradley v. Erie R.R. Co., 106 N.J.L. 51 (1929), reiterated the holding of the *420 Trautwein case, supra, in stating that aside from the carrier's duty to its passengers in travel it was obliged to provide reasonably safe means of access to and from the premises. This duty was inherent in the relationship of the parties. To hold that by reason of a contractual arrangement between a carrier and a terminal company a carrier may be absolved of this duty to its passengers and remove this protection from the passengers, is to constitute a distinction of duty without a difference of relationship for which we find no justification in our law.
Defendant further asserts that it has by affidavit proven that its line terminates at Florida Avenue in the District of Columbia and that from that point to the terminal station, the line and facilities are the property of and under the jurisdiction and control of the Washington Terminal Company, a separate corporation; that this proof has not been disputed by plaintiffs' proofs, and that in that posture of the case the defendant's application should not have been denied. We are of the opinion that the aforementioned authorities are controlling and are dispositive of this issue.
The defendant claims exemption from liability under the limitation of responsibility imposed by the tariff relating to connecting carriers. Section 1 (3) of Title 49, Transportation, U.S.C.A. defines:
"The term `common carrier' as used in this chapter shall include all pipe-line companies; telegraph, telephone, and cable companies operating by wire or wireless; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation or transmission as aforesaid as common carriers for hire."
It is provided further that:
"The term `railroad' as used in this chapter shall include all bridges, car floats, lighters, and ferries used by or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement, or lease, and also all switches, spurs, tracks, terminals, and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein, including all *421 freight depots, yards, and grounds, used or necessary in the transportation or delivery of any such property."
We find nothing in the Interstate Commerce Act which specifically makes a terminal company a common carrier and we are of the opinion that the definitive section 1 (3), referred to above makes a distinction between carriers and terminal companies and, therefore, the limitation of liability between connecting carriers claimed by defendant may not be extended to include the Washington Terminal Company, for the statutory definition of carriers does not include terminal companies.
We have considered the case of Bright v. Pennsylvania R.R. Co., supra, relied upon by defendant as controlling, but we find no proof that this holding has been recognized by our courts and we consider it to be distinguishable from the matter sub judice. In that case the passenger was injured by jostling from an unusually large and unruly crowd while the complainant was waiting to entrain. The holding in that case supports the general principle that:
"A carrier is not liable for an injury caused by the rude or inconsiderate jostling or crowding of one passenger by another. But if the carrier has reason to anticipate the gathering of a large crowd at a station or platform, it is bound to take such reasonable precautions as the condition to be anticipated may dictate to avert injury to a passenger by the rushing or crowding of the persons thus assembled, the necessity and sufficiency of the precautions being ordinarily for the jury." 32 A.L.R., Carriers  Rush of Passengers, p. 1316.
The judgment of the Hudson County Court, Law Division, is affirmed.