## NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4742-18

ELENA MERCADO,

    Plaintiff-Appellant,

v.

DONNA L. KRIMMEL and
NJ TRANSIT CORP/STATE
OF NEW JERSEY,

    Defendants-Respondents.

_____

Argued November 12, 2020 - Decided  September 16, 2021

Before Judges Ostrer, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law
Division, Atlantic County, Docket No. L-0230-17.

Brian T. Reagan argued the cause for appellant.

Brett J. Haroldson, Deputy Attorney General, argued
the cause for respondents (Gurbir S. Grewal, Attorney
General, attorney; Melissa H. Raksa, Assistant
Attorney General, of counsel; Brett J. Haroldson, on the
brief).

Eric G. Kahn argued the cause for amicus curiae New Jersey Association for Justice (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Eric G. Kahn and Annabelle M. Steinhacker, of counsel and on the brief).

PER CURIAM

Plaintiff Elena Mercado's car was rear-ended by a New Jersey Transit bus on a snowy morning in Atlantic City.  She appeals from a summary judgment dismissing her complaint based on the weather immunity accorded public entities in N.J.S.A. 59:4-7, which provides that "[n]either a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions," and denying her cross-motion on liability.[1]  Because Mercado contends, with some evidentiary support, that the accident was caused by defendant bus driver Donna Krimmel's negligence and not solely by the conditions of the road, we reverse summary judgment to defendants, affirm the denial of summary judgment to plaintiff and remand for trial.

---

[1] Plaintiff also appeals the denial of her cross-motion for summary judgment on her claim the alleged injury to her spine constituted a permanent loss of a bodily function under the Tort Claims Act.  See Gilhooley v. Cty. of Union, 164 N.J. 533, 539 (2000).  The trial court did not reach the issue, and we decline to decide it in the first instance.  See Minelli v. Harrah's Resort Atlantic City, 463 N.J. Super. 539, 547 (App. Div. 2020) (explaining that because "the trial court did not consider the issue, it is inappropriate for us to do so in the first instance").

A-4742-18

In their statements of material facts on their cross-motions for summary judgment on liability, the parties agree the accident happened at around 10:30 a.m. at the intersection of Atlantic and Kentucky Avenues in Atlantic City. They agree plaintiff was traveling on Atlantic in the left lane and stopped at the light at Kentucky. They also agree it was snowing pretty hard and there was snow and ice on the road. Plaintiff described conditions as slushy. Although Krimmel had been on the road driving her route for almost an hour prior to the accident, she couldn't recall at her deposition what the traffic conditions had been or whether she'd had any difficulty bringing the bus to a stop at any time before the accident. Plaintiff, who stopped at the same light less than a minute before the bus did, had no difficulty stopping.

The bus driver claimed she saw plaintiff's car stopped at the light, and "was going very slow," about "five miles an hour" with her foot on the brake as she approached the intersection. When she was about a bus length away from plaintiff's car, "[she] realized that [she] was sliding," and "beeped [her] horn" to warn plaintiff she couldn't stop. Although Krimmel claimed she had traveled the length of Atlantic in the right lane, and would have been stopping the bus at the bus stop at Atlantic and Kentucky even had plaintiff's car not been stopped

at the light,[2] there is no dispute that plaintiff's car was in the left lane and that the bus was directly behind it when the collision occurred.[3]  Krimmel explained there was a bus stop at almost every block on Atlantic, and that she would have driven only a block or so from her last stop to the intersection of Atlantic and Kentucky.  She estimated her top speed would have been no more than twenty-five miles per hour, the posted limit, on the short hops between stops.

Plaintiff denied the bus driver was driving very slowly, and certainly not at five miles per hour when the bus started to slide into plaintiff's car.  Plaintiff claimed the bus was traveling too fast for the road conditions, and noted New Jersey Transit's own onboard video system recorded the bus traveling at nineteen miles per hour and already rapidly decelerating when the video was triggered by the driver's act of hitting her brakes.

Krimmel's supervisor testified at deposition that the bus's onboard video system was not of a continuously recording type.  Instead, he explained if the

[2]  Defendants disputed this fact in their response to plaintiff's material fact statement, claiming "the assertion is that this would have been [the driver's] bus stop, whereas the question asked if she would stop when traffic stopped."  We deem it not in dispute because on the page of transcript plaintiff cited, Krimmel testified unequivocally that "Kentucky is a bus stop."  There is no dispute that the bus stops at each bus stop.

[3]  We note plaintiff claimed the right lane at the intersection was a turning lane, thus making the left lane the only one available for thru traffic.

bus driver "hit the brakes hard when she was trying to stop, . . . that will activate the video." When plaintiff's lawyer asked whether the supervisor was saying "[t]he video doesn't record nonstop but only because of certain triggering events," the supervisor replied, "You've got to do something wrong or bus have to hit a hard bump, hits the brakes hard, illegal or jerking turns. Under normal circumstances, there is no video." The video, taken from inside the bus, is very short. It captures the sound of the bus's horn, the almost immediate sound of the impact of the collision, which, judging from the position of the bus passengers, was not particularly forceful, and the deceleration of the bus from nineteen miles per hour at the start of the video to eight miles per hour at impact.

Defendants asserted on their motion that plaintiff had not established prima facie proof of negligence, and that they were entitled to weather immunity under N.J.S.A. 59:4-7 in any event. Plaintiff countered that Krimmel's operation of a New Jersey Transit bus is a plainly ministerial act, requiring evaluation of the public entity's "liability . . . based on an ordinary negligence standard." Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490 (2014). She argued N.J.S.A. 59:4-7, the weather immunity provision of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, does not shield a negligent bus driver from tort liability

but is limited to cases in which the plaintiff alleges she has been injured as a result of a dangerous condition of public property.

The judge found no genuine issue of material fact as relates to the Tort Claims Act and that defendants are immune from suit under N.J.S.A. 59:4-7 based on weather immunity. Specifically, the judge found the motion record "clearly delineate[d] the hazardous conditions on the road at the time the accident occurred," that the driver was operating the bus "under the purview" of New Jersey Transit in those conditions, and that the bus "skidded or slid across Kentucky Avenue when the contact was made [with] . . . plaintiff's vehicle." The judge found it didn't matter whether the bus was traveling at five or nineteen miles per hour because there was "nothing in the evidence" to permit him to conclude anything other than that the accident was caused by the weather conditions. The judge found "the only reasonable inference" he could draw from the facts presented on the motion record was "that weather conditions at the time of the accident [were] the sole culprit" of plaintiff's injuries. He denied plaintiff's motion for reconsideration in a written opinion, again finding "the weather was the 'culprit' for this motor vehicle accident and immunity applies to these defendants." See Horan v. State, 212 N.J. Super. 132, 136 (App. Div.

6

1986) (holding "N.J.S.A. 59:4-7 has a plain meaning: when weather is the true culprit, government is immune").

Plaintiff appeals, with both sides reprising the arguments they made to the trial court. The New Jersey Association for Justice, appearing as amicus curiae on our leave, echoes plaintiff's argument that the trial court wrongly applied the Tort Claims Act's weather immunity provision to a claim of auto negligence, which it contends with plaintiff is limited to claims arising out of dangerous conditions of public property. It also argues our interpretation of the provision "cannot be divorced" from its location in Chapter Four of the Act, the section addressing conditions of public property.

We review summary judgment using the same standard that governs the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). The motion court is to "carefully evaluate the record in light of the governing law, and determine the facts in the light most favorable to the non-moving party." Ibid. We do the same. While it is axiomatic that summary judgment cannot be granted when there are material facts in dispute, what facts are material is a question of the substantive law. See Higgins v. Thurber, 413 N.J. Super. 1, 6 (App. Div. 2010), aff'd 205 N.J. 227 (2011).

Although the parties obviously dispute whether the bus driver was using due care in light of the road conditions, the trial judge determined it didn't matter how fast the bus was traveling when the driver attempted to bring it to a stop because "the only reasonable inference" to be drawn from the motion record was that weather conditions were the sole cause of the accident, thereby triggering the immunity of N.J.S.A. 59:4-7. We cannot agree.

As our Supreme Court recently explained in Maison v. N.J. Transit Corp., 245 N.J. 270, 289 (2021), public entities and their employees "have the benefit of multiple immunities that shield them from liability." See N.J.S.A. 59:2-1(a) (providing a public entity is not liable in tort "[e]xcept as otherwise provided by this act"). And in light of "those immunities and other exceptions . . . the [Tort Claims Act] provides that '[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.'" Maison, 245 N.J. at 289 (quoting N.J.S.A. 59:2-2(a) with emphasis added); N.J.S.A. 59:3-1(a) ("Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person."). The Court thus explained that "in the absence of an applicable immunity," the Tort Claims Act "generally contemplates a

symmetry of treatment between government actors and private actors." Maison, 245 N.J. at 289.

What that means for this case is that absent an applicable immunity, the defendant bus driver is held to the same standard of ordinary negligence as any other driver, because driving a bus is a ministerial and not a discretionary act.[4] See id. at 292 (explaining "[t]he Task Force Comment to N.J.S.A. 59:2-3(d) concludes by stating, 'this section adopts the test commonly applied by the courts that a public entity or public employee is liable for negligence in the performance of ministerial duties'" (quoting Report of the Attorney General's Task Force on Sovereign Immunity 213 (1972)); see also Henebema v. S. Jersey Transp. Auth., 430 N.J. Super. 485, 502-03 (App. Div. 2013) (explaining "[a]n act is 'ministerial' if it is 'one which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without

---

[4] Although the Court in Maison held New Jersey Transit "and its bus drivers are held to the same negligence standard under the [Tort Claims Act] as other common carriers — to exercise the utmost caution to protect their passengers as would a very careful and prudent person under similar circumstances," that duty is one owed to paying passengers and not other drivers. See Horelick v. Pa. R. Co., 24 N.J. Super. 413, 417 (App. Div. 1953) ("We consider it to be a principle of general acceptance, requiring no citation, that it is the relationship of carrier and passenger which gives rise to the carrier's duty to use reasonable care and caution for his safety."), aff'd Horelick v. Pa. R. Co., 13 N.J. 349 (1953).

A-4742-18

regard to or the exercise of his [or her] own judgment upon the propriety of the act being done'" (quotation omitted)), aff'd, 219 N.J. 481 (2014).

In other words, officials at New Jersey Transit had already made the discretionary decision to establish the bus route, and Krimmel's responsibility was limited to the ministerial task of operating the bus along the route in accordance with the motor vehicle code. As the Court explained in Chatman v. Hall, 128 N.J. 394, 403 (1992), "the standard of care applicable to public employees," in the absence of a specific immunity, "depends on the nature of their duties. If those duties are ministerial and non-discretionary, public employees may be found liable if they failed to use reasonable care," whereas "[i]f those duties require the exercise of discretion or policy decisions, public employees may be found liable if their failure to use care was palpably unreasonable." Ibid.

Plaintiff and amicus argue the weather immunity provision of the Act is limited to claims arising out of dangerous conditions of public property and "has absolutely no connection to a car crash case where the claim is for negligent driving by a public entity vehicle operator." They further argue that "there is no claim asserted that a 'dangerous condition of public property' was the cause of the crash." And they note that not one of the cases cited by defendants or relied

on by the trial court involved a claim against a public entity for its employee's alleged negligent driving, but all are cases against a public entity "for not remedying a 'dangerous condition of public property,'" i.e., the condition of the road on which the accident occurred.

Defendants counter that the weather immunity provision of the Tort Claims Act is not limited to the public entity that owns the road on which the accident occurred or is responsible for its maintenance, as plaintiff and amicus assert. See Dickson v. Twp. of Hamilton, 400 N.J. Super. 189, 200-01 (App. Div. 2008) (holding "the scope of climatological immunity provided by N.J.S.A. 59:4-7, extends to public entities generally, not the property owner specifically . . . consistent with the broad common-law governmental immunity for routine, anticipated dangerous conditions resulting from snow and ice"). Relying on the statute's plain language, they argue the only criteria for application of weather immunity under N.J.S.A. 59:4-7 is that 1) the alleged injuries arose out of the use of streets or highways, and 2) were caused solely by weather. Defendants claim that "[b]ecause it is undisputed that this accident occurred on a street and that weather was the sole cause, the trial court correctly found that weather immunity applies."

11

In our view, the parties' dispute over whether the Act's weather immunity provision is available to public employees in auto negligence cases is best understood in the context of Justice Clifford's characteristically terse and cogent concurrence in Pico v. State, 116 N.J. 55 (1989), the case relied on by the trial judge.

The plaintiff in Pico was commuting to work on Route 23 in Wayne, when she noticed cars pulled off the road and drivers waving their hands at oncoming traffic. Id. at 58. She promptly skidded on ice, but managed to regain control of her car and pulled off the road. Ibid. While standing outside her car, however, she was struck by another car, which slid sideways on the same icy patch. Ibid. The plaintiff sued the driver, the municipality, the county and the State. Ibid. She settled with the driver, and the trial court dismissed her complaint against Wayne and the county as neither had any jurisdiction over Route 23, a state highway. Ibid.

The trial court also dismissed the complaint against the State based on weather immunity, notwithstanding the State had conceded for purposes of the motion that its failure to address the condition of the road after being notified of the ice was palpably unreasonable. Ibid. We agreed the State was immune from suit under N.J.S.A. 59:4-7 for the dangerous condition of the road, but reversed

the judgment, believing the State might be liable for its employee's failure to address the icy condition after advising the municipality he would take care of it. Ibid. The Court reversed, holding that because the parties agreed "the State did nothing to increase the danger of the ice in its natural condition," it was left "with the inescapable fact that the sole cause of the accident was the icy condition in its natural state." Id. at 61. Although noting "a public entity is generally liable for the ordinary negligence of its employees in performance of ministerial duties, N.J.S.A. 59:2-2; N.J.S.A. 59:2-3(d), that liability yields to a grant of immunity," thus barring the plaintiff's claim against the State. Id. at 62.

Justice Clifford "join[ed] entirely in the opinion of the Court," but lamented that "[i]n enacting N.J.S.A. 59:4-7 the legislature resorted to particularly unfortunate language." Pico, 116 N.J. at 64 (Clifford, J. concurring). He pointed out "that the statute does no more than state the obvious, for if the injury results solely and exclusively from weather conditions, there could be no actionable claim against anyone. That is the old 'act of God' defense." Ibid. Justice Clifford observed "[t]he statute does not confer immunity, for there is no liability to immunize against if a claimant's injuries find their cause solely in the weather conditions." Ibid. He wrote:

> I suppose what is meant is that there is no duty to clean
> up those conditions of streets and highways that are

13

produced by storms and the like, and I suppose too that the Court is correct in reading some sense into the statute. And I suppose, finally, that this little legislative lapse is not worth losing much sleep over. But I do wish someone would clean up the act.

[Ibid.]

Unfortunately, no one has done so, leading to the confusion before us. We agree with Justice Clifford's paradigm, that if plaintiff's injuries in this bus accident were caused solely by the effect of the weather on Atlantic Avenue, then the bus driver, and derivatively New Jersey Transit, would have no liability to immunize against, making the debate over whether N.J.S.A. 59:7-4 is or is not available to defendants in this auto negligence case of no moment. It is equally clear to us, however, that the parties do not agree that the slushy conditions were the sole cause of the accident, and the trial court erred in finding "the only reasonable inference" to be drawn from the facts in the motion record was "that weather conditions at the time of the accident [were] the sole culprit."

Our review of the facts adduced on the motions, viewed in the light most favorable to plaintiff as required by Rule 4:46-2(c), convinces us the evidence is sufficient to allow a rational factfinder to determine that weather was not the sole cause of the accident but only a contributing factor, and that the driver's failure to take due care in light of the road conditions may also have contributed

to the crash.  See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Specifically, plaintiff contends the driver was traveling too fast for the slushy conditions.  She points to facts establishing Krimmel was not traveling at five miles per hour as she testified but at least nineteen miles per hour over a distance of only a block or so between stops.  Plaintiff further notes the bus driver hit her brakes hard enough to activate the recording system, and asserts that she could slow the bus from nineteen miles per hour at that point to eight at impact permits the reasonable inference that the bus had traction with the road and was not in an uncontrolled slide as the bus driver maintained.  Finally, plaintiff notes she stopped her own car safely at the light less than a minute before the bus arrived traveling in the same lane, suggesting due care would have allowed the driver of the bus to do the same despite the slushy conditions.

While defendants are correct that negligence is never presumed, and skidding alone will not justify an inference of negligence, "skidding may be evidence of negligence if it appears that it was caused by the failure of the driver to take reasonable precautions to avoid it, when conditions of which he knew or should have known made such a result probable in the absence of such precautions." Mockler v. Russman, 102 N.J. Super. 582, 588 (App. Div. 1968).  Even more important is that whether negligence "exists is preeminently a

question of fact for the jury." Ibid. (quoting Murphy v. Terzako, 14 N.J. Super. 254, 259 (App. Div. 1951). It is so here.

Because whether the bus sliding into plaintiff's car was unavoidable or the result of the bus driver's error presents a genuine dispute of material fact, summary judgment for either party was inappropriate in this case. Accordingly, we reverse entry of summary judgment for defendants, affirm denial of summary judgment to plaintiff and remand for trial to permit a jury to decide the question of defendants' negligence.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4742-18