254 N.J. Super. 641 (1992)
604 A.2d 183
JOHN W. TICE, SR., ADMINISTRATOR AD PROSEQUENDUM OF JOHN W. TICE, JR., DECEASED, AND JOHN W. TICE, SR., GENERAL ADMINISTRATOR OF THE ESTATE OF JOHN W. TICE, JR., DECEASED, AND JOHN W. TICE, SR., AND RITA TICE, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
ROBERT CRAMER, CITY OF WILDWOOD, CITY OF WILDWOOD POLICE DEPARTMENT, AND WILLIAM G. LOGAN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1991.
Decided March 16, 1992.
*643 Before Judges KING, DREIER and GRUCCIO.
Anne P. McHugh argued the cause for appellants (Pellettieri, Rabstein & Altman, attorneys).
James P. Savio argued the cause for respondents (Savio, Reynolds & Drake, attorneys; Richard K. Tavani and James P. Savio on the brief).
KING, P.J.A.D.
This case presents again the issue of the liability of police officers and municipalities under Title 59 for their alleged negligence during motor vehicle pursuits of suspects. To date, panels of our court have disagreed on governmental responsibility *644 in these so-called "hot pursuit" cases and the issue will doubtless find resolution in the Supreme Court.
In this case plaintiffs appeal from a summary judgment on immunity grounds barring their claim for damages, under State law, arising out of a claimed high-speed police pursuit at about 8:30 p.m. on November 12, 1985 in the City of Wildwood (City). The plaintiffs allege that the officer conducted the pursuit in a careless or reckless manner. The plaintiffs also allege that the City failed to train and supervise its officers in the proper conduct of high-speed pursuits.
These are the facts adopted by the judge from the record before him. A vehicle operated by defendant William Logan was pursued through the City by a police vehicle operated by Patrolman Robert Cramer. The Logan vehicle was traveling, on a foggy night, at a very high rate of speed without headlights. The pursuit ended at the intersection of Burke Avenue and Park Boulevard, when defendant Logan illegally entered the intersection against a stop sign at a high rate of speed and collided with a vehicle operated by plaintiffs' decedent, John Tice.
Suit was instituted against Logan, Cramer, the City of Wildwood and the Wildwood Police Department. Plaintiffs claimed that Cramer was negligent and reckless in pursuing the Logan vehicle. They also alleged that the City Police Department failed to properly supervise, instruct and train police employees in conducting high-speed pursuits.
The chase originated in the vicinity of Park Boulevard and Rio Grande Avenue, where Officer Cramer was dispatched to investigate a melee or disturbance at the Rio Grande Tavern. Upon approaching the scene he observed a red Renault, operated by Logan with three male occupants, pull out in front of him without lights and leave the area. Cramer observed an object, apparently a hammer, thrown from the Logan vehicle at the police vehicle. Cramer then pursued the Renault westbound on Rio Grande Avenue for a short distance, when Logan turned *645 right, northbound, on Park Boulevard with Cramer in pursuit. Logan then turned right onto Burke Avenue, traveling eastbound on a one-way westbound street. Cramer continued pursuit, also traveling the wrong way on the one-way street. Logan traveled one short block eastbound on Burke and then turned left onto Arctic Avenue, again heading northbound. Arctic Avenue at this location is a one-way street northbound. After going a short distance on Arctic Avenue, Logan turned eastbound on Davis Avenue, crossed New Jersey Avenue and Pacific Avenue and arrived at Atlantic Avenue where he turned southbound. A short distance later, Logan turned right again, traveling westbound on Burke Avenue. Burke Avenue is a westbound one-way street, the traffic on which is obligated to stop for all cross streets. Logan then crossed Pacific, New Jersey and Arctic Avenues without stopping and was in the process of crossing Park Boulevard, against the stop sign, when the accident occurred.
Logan's vehicle struck the left side of the pick-up truck driven by decedent. The accident resulted in the deaths of Tice and James Costello, a passenger in the back seat of Logan's car. William Logan, Christopher Elia, a passenger in Tice's truck, and Richard Bain, a passenger in Logan's car were injured. The other parties filed personal injury and wrongful death claims which were eventually settled and are not part of this appeal. The plaintiffs' action against Logan ended with a $400,000 consent judgment entered against him. Logan had claimed that one of his passengers forced him to flee the officer by holding a tire iron to his throat and threatening to kill him.
In deciding defendants' motion, the Law Division judge accepted the factual scenario proffered by the plaintiffs, although the defendants disputed that the patrol vehicle was being operated at an unreasonable rate of speed. The defendants asserted that Officer Cramer was not in "hot pursuit" but was just keeping the Logan vehicle in sight. In any case, the judge found there was "no suggestion by anyone that Patrolman Cramer either initiated pursuit or continued it in bad faith."
*646 The Law Division judge concluded that N.J.S.A. 59:5-2(b) established immunity in this case. The section states:
Neither a public entity nor a public employee is liable for:
* * * * * * * *
b. any injury caused by: (1) an escaping or escaped prisoner; (2) an escaping or escaped person; or (3) a person resisting arrest; or (4) a prisoner to any other prisoner. [Emphasis added].
He also relied upon the 1972 Attorney General's Task Force Comment which simply says:
Subsection (b) reflects the judgment that governmental liability should not be extended beyond reasonable limits.
These comments have the value of legislative history. Rochinsky v. State of N.J., Dep't of Transp., 110 N.J. 399, 406-407 n. 3, 541 A.2d 1029 (1988). The judge concluded that the Legislature intended to implement a broad immunity policy in situations where the police were arresting or in pursuit of suspects. We agree that the seemingly inclusive language of N.J.S.A. 59:5-2(b) conveys the intention that such pursuits are immunized. Specifically, the words "escaping or escaped person" encompass these vehicular pursuit situations.
We reach this conclusion with the background of history in mind. When adopted in 1972, the Tort Claims Act made specific provisions for the preservation of public employee and entity immunities afforded by prior case law. N.J.S.A. 59:3-1(b); see N.J.S.A. 59:2-2. These sections "permit[] the courts to continue to recognize common law immunities to the extent they are consistent with the provisions of this act." H. Margolis & R. Novack, Claims Against Public Entities (1991), Task Force Comment to N.J.S.A. 59:2-2(b), at 19; see Burke v. Deiner, 97 N.J. 465, 472, 479 A.2d 393 (1984); Timber Properties, Inc. v. Chester Tp., 205 N.J. Super. 273, 287, 500 A.2d 757 (Law Div. 1984) (Skillman, J.).
At the time the Tort Claims Act was adopted in 1972, the status of common-law immunity for damages resulting from pursuit of fleeing violators was embodied in Roll v. Timberman, 94 N.J. Super. 530, 229 A.2d 281 (App.Div.), certif. denied, *647 50 N.J. 84, 232 A.2d 147 (1967), a case factually similar to the case before us, where a chase ended with the suspect hitting a third vehicle and killing a passenger. We rejected the liability claim for two reasons:
(1) it is the duty of a police officer to apprehend those whose reckless driving makes use of the highways dangerous to others;
(2) the proximate cause of the accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving. [Id. at 536, 229 A.2d 281].
We also stated that "police cannot be made insurers of the conduct of the culprits they chase." Id. at 537, 229 A.2d 281. Roll does not specifically speak in terms of immunity but rather stresses the duty of the police officer to pursue and capture suspects. We said that "the decisive issue in this case is whether a police officer is liable for damage caused by a vehicle operated by a fleeing law violator...." Id. at 536, 229 A.2d 281. We stressed that when a violation of law was observed the officer had "a duty to apprehend" the suspect and the officer "was exempt from speed regulations." Id. at 537, 229 A.2d 281. While the wording of Roll generally does speak in terms of the absence of any tort duty in the circumstance, the policy of immunity for this type of police conduct was clearly the thrust of the opinion. In this context the absence of duty and the presence of immunity amount to the same thing.
The first reported decision on the subject after the adoption of Title 59 was Blanchard v. Town of Kearny, 145 N.J. Super. 246, 367 A.2d 464 (Law Div. 1976), aff'd o.b., 153 N.J. Super. 158, 379 A.2d 288 (App.Div. 1977). The plaintiff was an injured passenger in a car which was pursued and which crashed in a high-speed chase. Judge Bilder, then of the Law Division, phrased the sole question before the court as "whether the passage of the New Jersey Tort Claims Act has affected the case law immunity recognized in Roll." Id. at 249, 367 A.2d 464. He concluded that N.J.S.A. 59:3-1(b) "preserved to public employees the immunities previously given by case law," and that the officer "remains clothed with the immunity recognized in Roll." Ibid. We affirmed on Judge Bilder's opinion.
*648 Another panel of this court reached a different conclusion in Smith v. Nieves, 197 N.J. Super. 609, 485 A.2d 1066 (App.Div. 1984), holding that Roll was not an expression of immunity but an affirmance of a finding of no negligence as a matter of law. We disagree with Smith, and conclude that Roll was an expression of immunity from liability when the officer was engaged in a good faith pursuit in the course of his police duties. Though Roll is not a model of clarity, its point is apparent: no liability attached for high-speed pursuit of suspects. We disagree with the conclusion in Smith that ordinary negligence principles must apply to those high-speed pursuit cases. Id. at 612, 485 A.2d 1066. We see no warrant in Title 59 for expanding the scope of municipal liability beyond that which existed before its adoption. We conclude that N.J.S.A. 59:5-2(b), immunizing police for injury caused by "an escaping or escaped person," sets out a specific guideline reinforcing the protection of law enforcement personnel in performance of their duties. The entire scheme of Chapter 5 of Title 59 embraces this policy. There is no way we can read Chapter 5 as expanding the liability of law enforcement officers after adoption of Title 59 in 1972.
Also instructive in N.J.S.A. 59:5-2(b)(2) is the use of the words "escaping or escaped person." The other three subsections refer to either "prisoners" or a "person resisting arrest." The use of the expression "escaping person" then suggests a broader class than just "escaping prisoners" or "persons resisting arrest." Logically, we think that a broader class would include persons escaping arrest who have not yet been arrested or become prisoners, i.e., persons like the pursued driver, in this case, William Logan.[1]
*649 As Justice Pollock reminded us in Pico v. State, 116 N.J. 55, 59, 560 A.2d 1193 (1989), we must "begin by affirming the now-familiar principle that the public policy of this State is that public entities shall be liable for their negligence only as set forth in the Tort Claims Act. N.J.S.A. 59:1-2." The "initial inquiry is whether any immunity applies," and if not, should liability attach. Ibid. Thus, "liability yields to a grant of immunity." Id. at 62, 560 A.2d 1193. A specific immunity "trumps liability predicated on ordinary negligence." Id. at 63, 560 A.2d 1193.
An additional reason we affirm is because under N.J.S.A. 59:3-3 "a public employee is not liable if he acts in good faith in the execution or enforcement of any law." See Marley v. Palmyra Bor., 193 N.J. Super. 271, 295, 473 A.2d 554 (Law Div. 1983) (good faith may exist in the presence of negligence). The judge found, and the record bears out, that "there is no suggestion by anyone that Patrolman Cramer either initiated pursuit or continued it in bad faith." This is in contrast to Wood v. City of Linden, 218 N.J. Super. 11, 526 A.2d 1093 (App.Div. 1987), where we considered the issue of whether a jury question was raised concerning "good faith" immunity under N.J.S.A. 59:3-3.
In that case the plaintiff was a passenger in a vehicle driven by a fleeing suspect trying to avoid apprehension. A high speed chase ensued during which the police intentionally rammed the suspect's vehicle several times, pushing it into a parked van and causing plaintiff's injuries. The pursuit resulted from an unsuccessful attempt by the police to serve the driver of the vehicle with an arrest warrant. The Law Division judge granted the defendant's motion for dismissal because of the "good faith" immunity. We reversed, concluding that the plaintiff had made out a prima facie jury case that the police were not acting in good faith by serial rammings of the stopped vehicle. Id. at 17-18.
*650 We see no suggestion of conduct in this case before us akin to the police conduct described in Wood. The conduct of the officer here constituted objectively reasonable good faith as a matter of law. See Lear v. Tp. of Piscataway, 236 N.J. Super. 550, 553, 566 A.2d 557 (App.Div. 1989); see also Kirk v. City of Newark, 109 N.J. 173, 188, 536 A.2d 229 (1988) (a subjective rule "could paralyze police and prevent them from acting to protect the public").
We acknowledge plaintiffs' contention that Logan was merely "eluding an officer" within the meaning of N.J.S.A. 2C:29-2(b)[2] and was not "escaping" from official detention as defined in N.J.S.A. 2C:29-5.[3] We are not persuaded that these definitions in the Criminal Code must control our construction of Chapter 5 of Title 59, earlier legislation specifically designed to provide immunity to public entities and employees who grapple and tangle with the daily problems of law enforcement. We do not think that the words "escaped or escaping person" in N.J.S.A. 59:5-2(b)(2) should receive a cramped interpretation in view of the clear legislative objective of immunity. Nor can we construe N.J.S.A. 39:4-91[4] as eroding immunity from tort *651 liability under Title 59. This section of the Motor Vehicle Code goes back to 1928 (L. 1928, c. 281) and has nothing to do with the immunity scheme contemplated by the 1972 Tort Claims Act. Respecting these rather technical comparative statutory arguments by plaintiffs, we are inclined to follow the view of the California Supreme Court expressed in a cognate police pursuit case, Kisbey v. State, 36 Cal.3d 415, 682 P.2d 1093, 1096, 204 Cal. Rptr. 428, 431 (1984):
It seems clear that the purpose of the broadening amendment to subdivision (b) was to immunize public entities and employees from the entire spectrum of potential injuries caused by persons actually or about to be deprived of their freedom who take physical measures of one kind or another to avoid the constraint or to escape from it. It would plainly violate the legislative intent if particular words of the statute  such as "arrest" or "resisting"  were given such technical meanings that a case fell between the cracks of the immunity because, for example, the police had not intended a full arrest  as distinguished from a temporary detention  when the subject fled, or because at the time of the escape the process had not reached the point of physical control over the suspect.
Finally, plaintiffs assert an independent basis for negligence on the part of the City and its police department failure to train and supervise Officer Cramer. We conclude that the immunity conferred under N.J.S.A. 59:5-2(b)(2) to public entities and employees is broad enough to immunize this claimed *652 negligence. In their "Comment" to this section H. Margolis & R. Novack observe:
This section deals with correction and police activities and provides broad immunity for injuries caused by prisoners who are released from or escape from custodial control and by persons not yet prisoners and who are resisting arrest or escaping. It also provides immunity for any injury caused by one prisoner to another.
The immunity afforded under this section does not depend on the ministerial-discretionary dichotomy, but instead covers negligent ministerial behavior as well as decision-making. Coppola v. State of N.J., 177 N.J. Super. 37 [424 A.2d 858] (App.Div. 1981) ("total and absolute immunity" extended to the parole board in its determination to parole prisoner even if board did not comply with provision of parole statute); White v. Lewis, 156 N.J. Super. 198 [383 A.2d 744] (App.Div. 1978) (no liability for negligence of police in failing to separate plaintiff and his cellmate even though violent tendency of cellmate was known, both plaintiff and cellmate asked to be separated and another cell was available); Burg v. State, 147 N.J. Super. 316 [371 A.2d 308] (App.Div.), certif. denied 75 N.J. 11 [379 A.2d 242] (1977) (no liability for assault by convicted murderer participating in a work release program); see also Harris v. State, 61 N.J. 585 [297 A.2d 561] (1972); and see Blanchard v. Town of Kearny, 145 N.J. Super. 246 [367 A.2d 464] (Law Div. 1976), aff'd o.b. 153 N.J. Super. 158 [379 A.2d 288] (App.Div. 1977) (no liability for injuries arising out of a police chase of law violators). But see Smith v. Nieves, 197 N.J. Super. 609, 485 A.2d 1066 (App.Div. 1984) in which the court disagreed with Blanchard, supra, and held that a police officer might be liable for injuries caused by an escaping person during a car chase if the officer's conduct of the chase was negligent. The court also found a municipality might be liable for negligent training of the officer. Note that neither the Blanchard nor Smith courts referred to this section. [H. Margolis & R. Novack, Claims Against Public Entities (1991), Comment to N.J.S.A. 59:5-2, at 87; Emphasis added].
We conclude that the immunity of Officer Cramer and the City is total and absolute under this section. Any reconsideration of this policy is for the Legislature, not for the courts.
Judge Dreier would confine the reasoning supporting our affirmance to the grounds of "good faith" immunity conferred by N.J.S.A. 59:3-3 and not attempt to resolve the conflict between Roll v. Timberman, supra and Smith v. Nieves, supra.
We affirm.
NOTES
[1] Indeed, "flight knowingly intended to prevent a police officer from effecting an arrest of the fugitive constitutes guilt of the common-law crime of resisting arrest." State v. Blanton, 166 N.J. Super. 62, 71, 398 A.2d 1328 (App.Div.), certif. denied, 81 N.J. 265, 405 A.2d 810 (1979).
[2] N.J.S.A. 2C:29-2(b) states in pertinent part:

b. Any person, while operating a motor vehicle on any street or highway in this State, who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle to a full stop is a disorderly person. In addition to the penalty prescribed under this subsection or any other section of law, the court shall order the suspension of that person's driver's license for a period of not less than six months or more than two years....
This section added license suspensions as a penalty effective May 31, 1989. L. 1989, c. 84, § 1.
[3] A person commits the offense of "escape" under N.J.S.A. 2C:29-5(a) "if he without lawful authority removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." There was no "official detention" effected by Officer Cramer because Logan had not been arrested or detained in custody under N.J.S.A. 2C:29-5(a).
[4] N.J.S.A. 39:4-91 states in pertinent part:

Right of way of emergency vehicles; liability of drivers
The driver of a vehicle upon a highway shall yield the right of way to any authorized emergency vehicle when it is operated on official business, or in the exercise of the driver's profession or calling, in response to an emergency call or in the pursuit of an actual or suspected violator of the law and when an audible signal by bell, siren, exhaust whistle or other means is sounded from the authorized emergency vehicle and when the authorized emergency vehicle, except a police vehicle, is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of at least five hundred feet to the front of the vehicle.
This section shall not relieve the driver of any authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall it protect the driver from the consequences of his reckless disregard for the safety of others.