212 N.J. Super. 132 (1986)
514 A.2d 78
ROBERT A. HORAN, PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY AND TOWNSHIP OF OLD BRIDGE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1986.
Decided August 21, 1986.
Before Judges FRITZ and GAYNOR.
John VR. Strong Jr. argued the cause for appellant (Strong & Strong, attorneys).
Madeleine W. Mansier, Deputy Attorney General, argued the cause for respondent State of New Jersey (W. Cary Edwards, *133 Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Benjamin Clarke, Deputy Attorney General, on the brief).
Maureen LePochat argued the cause for respondent Township of Old Bridge (Tolstoi & Tolstoi, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Plaintiff sought damages against defendants State and Old Bridge Township consequent to a one-car accident on a state highway in that township when plaintiff lost control of his car on an icy overpass. The substantial question raised on this appeal concerns the liability, if any, of the State and the municipality for failure to warn the traveling public of ice on an overpass produced by the fact that the bridge froze before the adjacent roadways. The Tort Claims Act (N.J.S.A. 59:1-1 et seq.) (Act) is implicated. The trial judge dismissed the complaint as against both defendants on their respective motions for summary judgment. We affirm.
The case is not at all complex. The probability of a bridge's freezing before the adjoining roadway was realized in this matter as it had been before at this overpass (and probably hundreds of others). This freezing is the condition which caused plaintiff to lose control of his automobile. For the purposes of this review we assume a factual finding that this condition had occurred before to the knowledge of the municipality and that the police knew of the existence of the condition at the time of the accident.[1]
We are satisfied that N.J.S.A. 59:4-7 in effect restores the immunity of which the sovereign is deprived by N.J.S.A. 59:4-2, as amplified by N.J.S.A. 59:4-4, in cases in which, as here, the *134 "injury [is] caused solely by the effect on the use of streets and highways of weather conditions." If we are right in this, neither the State nor the municipality may be charged with the damages arising from this injury and the entry of summary judgments in their favor was correct.
The substance of plaintiff's argument is that the injury was not caused solely by the weather, but that the failure of defendants to warn of the likelihood of this potential contributed as a causal event. He embellishes this argument by insisting that N.J.S.A. 59:4-2 imposes a duty when there is a dangerous condition to warn of that condition. As the trial judge recognized and as we agree, if these arguments were thought to be sound, the weather immunity statute would, in effect, be written out of the books. It is apparent that weather contributes to the occurrence of injury from an accident only when that weather creates a dangerous condition. If the weather does not create a dangerous condition, then there is nothing with which to charge government in any event.
It is only when the weather contributes to the accident and injury in combination with a protagonist partner, as in Meta v. Township of Cherry Hill, 152 N.J. Super. 228 (App.Div. 1977) (a ditch beside the road, filled with silt and vegetation, caused the water to overflow the highway), certif. den. 75 N.J. 587 (1977) and McGowan v. Borough of Eatontown, 151 N.J. Super. 440 (App.Div. 1977) (a driveway on the roadside property of a restaurant caused a runoff of large quantities of water onto the highway), that a public entity loses the immunity granted by N.J.S.A. 59:4-7. We are unwilling to equate a failure to warn of the existence of a dangerous condition with the contribution to that condition that a filled ditch or a constructed driveway might make. It is clear to us that the injuries in question here resulted in a causal sense  and that is the direction of N.J.S.A. 59:4-7  solely from the effect of weather conditions on the highway and the manner in which plaintiff used that highway.
If this were a question of statutory construction or interpretation, our conclusion would be the same. Despite the concessions *135 made by statute in the wake of attrition by judicial surgery, immunity remains the natural state of affairs respecting governmental tort liability. As Justice O'Hern points out in his concurrence in Kolitch v. Lindedahl, 100 N.J. 485, 498 (1985), the statutory reshaping of the doctrine is constrained in a manner indicating that immunity is the dominant consideration of the Act. See also Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 596 (1982). The comment which follows N.J.S.A. 59:2-1, from the Report of the Attorney General's Task Force on Sovereign Immunity (1972), points out that
the analytical approach that courts "ought not to be... asking why immunity should not apply in a given situation but rather ... asking whether there is any reason why it should apply." B.W. King, Inc. v. West New York, 49 N.J. 318, 325, ... (1967) . .. is no longer necessary in light of this comprehensive Tort Claims Act. Rather the approach should be whether an immunity applies and if not, should liability attach. [Emphasis in original.] It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities.

Subsection [N.J.S.A. 59:2-1] (b) is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions. [Emphasis supplied.]
Further, we are satisfied that N.J.S.A. 59:4-7 is no more than a legislative codification of conservatism atypical of the general judicial approach to sovereign immunity in pre-Tort Claims Act days. Even before the Act, our Supreme Court acknowledged and applied the doctrine that "there are certain kinds of acts or omissions of government, no matter how they are categorized, defined or labelled or how governmental immunity from suit is to be regarded, which should not give rise to tort liability." Hoy v. Capelli, 48 N.J. 81, 87 (1966). Accord, Miehl v. Darpino, 53 N.J. 49, 54 (1968).
Nowhere is the propriety of the application of this approach to the case before us more apparent than it is in consideration of the matter of Kolitch v. Lindedahl, supra. If it is not tortious for the sovereign to fail to warn of a constantly dangerous condition and, indeed, rather to suggest a speed limit which is lawful but higher than safe, what tort can there be in failure to warn of a transient dangerous condition? Lest it be *136 said that it is the transiency of which the icy condition consists which makes it dangerous, take note that the vertical sag curve of Kolitch is a far less obvious condition to the passing, ordinary motorist than is the fact that bridges usually ice before roads. Thus our conviction that there is immunity and that we are not required to consider the liability feature segues into a residual question which, except for the immunity, might be of some moment: are bridges which freeze before roadways and the corollary that during times of freezing, bridges may well constitute a "dangerous condition," things "which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care"? N.J.S.A. 59:4-4.
But none of this philosophic conjecture is necessary. "A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers." Watt v. Mayor and Council of Borough of Franklin, 21 N.J. 274, 277 (1956). Accord, State v. Butler, 89 N.J. 220, 226 (1982); Duke Power Co. v. Patten, 20 N.J. 42, 49 (1955). It is clear to us that N.J.S.A. 59:4-7 has a plain meaning: when weather is the true culprit, government is immune.
Affirmed.
NOTES
[1] The Township points to the requirement of actual or constructive notice of the dangerous condition imposed by N.J.S.A. 59:4-2b, and argues that it had no notice of the presence of this condition on the day in question until the accident in question.