LORETTA A. PICO, PLAINTIFF–RESPONDENT, v. STATE OF NEW JERSEY, DEFENDANT–APPELLANT, AND COUNTY OF PASSAIC AND ERIC A. WALLER, DEFENDANTS, AND TOWNSHIP OF WAYNE, DEFENDANT–RESPONDENT.

Argued April 24, 1989—Decided July 25, 1989.

*Glenn R. Jones,* Deputy Attorney General, argued the cause for appellant (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney; *Benjamin Clarke,* Deputy Attorney General, of counsel).

*Michael S. Kopelman* argued the cause for respondent Loretta A. Pico.

*Michael L. Grabler* argued the cause for respondent Township of Wayne (*Lee Graham Karosen*, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The narrow issue on this appeal is whether defendant State of New Jersey (the State) is immune from liability to plaintiff, Loretta A. Pico (Pico or plaintiff), under the weather-immunity section of the New Jersey Tort Claims Act, *N.J.S.A.* 59:4-7, for failing to treat icy conditions on a state highway. The Law Division found that the weather immunity applied, and granted summary judgment for the State. Although the Appellate Division agreed that the weather immunity barred liability under *N.J.S.A.* 59:4-2 for a dangerous condition of State property, the court held that the State could be liable under *N.J.S.A.* 59:2-2a for the negligence of its employees in failing to treat the icy conditions. 223 *N.J.Super.* 446, 450 (1988). We now reverse and remand to the Law Division for the entry of judgment for the State.

–I–

Because this matter arises on the State's motion for summary judgment, we accept as true plaintiff's version of the facts as gleaned from the pleadings, affidavits, and depositions, giving her the benefit of all inferences favorable to her claim. *R.* 4:46-2; *Portee v. Jaffee*, 84 *N.J.* 88, 90 (1980); *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 61 (1980).

On January 24, 1984, an ice storm hit northern New Jersey around 3:00 a.m. At approximately 5:00 a.m., a Wayne Township policeman called the emergency number of the Department of Transportation (DOT) in Newark to report generally icy conditions along Route 23 in Wayne. DOT relayed this message to Patrick Avino, the foreman of the DOT maintenance yard in Totowa, which is approximately three miles from

Wayne. After making the call to Avino, the Newark DOT noted that "he will handle."

Between 7:30 and 7:50 a.m., Pico was driving northbound to work on Route 23 when she noticed that cars had pulled to the side of the highway and that people were waving their hands, apparently to warn approaching traffic. Her car skidded on a patch of ice, but she regained control and parked her car on the roadside. As she was walking to call her employer, she was injured when she was struck by a car driven by Eric Waller. According to Waller, the road was in good condition, and the accident happened when his car skidded sideways solely because of the icy conditions.

Plaintiff sued Waller, Wayne Township, Passaic County, and the State. She settled her claim against Waller, and has not petitioned this Court for review of the grant of summary judgment in favor of the township and the county, neither of which had jurisdiction over Route 23, a state highway.

In its motion for summary judgment, the State claimed that the suit was barred because of the weather immunity provided by *N.J.S.A.* 59:4-7, which provides: "Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions." For the purpose of its motion, the State conceded that its failure to respond to notification of the icy road conditions was palpably unreasonable.

The Law Division granted the State's motion because of the weather immunity under *N.J.S.A.* 59:4-7. Although the Appellate Division agreed that the weather immunity precluded liability under *N.J.S.A.* 59:4-2 for a dangerous condition, 223 *N.J.Super.* at 449-50, the court concluded that the State might be liable under *N.J.S.A.* 59:2-2a for Avino's negligence. According to the court, Avino may have undertaken a ministerial duty to protect motorists when he said that he would take care of the icy conditions. *Id.* at 450. In reaching that result, the court relied on *N.J.S.A.* 59:2-3d, which states in part: "Nothing in

this section shall exonerate a public entity for negligence aris-
ing out of acts or omissions of its employees in carrying out
their ministerial functions." Accordingly, the Appellate Divi-
sion perceived a factual issue whether the State undertook a
duty to make the roadway safe, and if so, whether any State
employee was negligent in failing to perform that duty. *Id.* at
451–52. We granted certification, 111 *N.J.* 630 (1988), and
remanded for reconsideration in light of our decision in *Rochin-
sky v. State Department of Transportation,* 110 *N.J.* 399, 414
(1988), in which we held that the Tort Claims Act, *N.J.S.A.*
59:1–1 to 14–4, did not abrogate the common-law immunity for
routine snow-removal activities. The Appellate Division there-
upon affirmed its earlier decision.

–II–

We begin by affirming the now-familiar principle that the
public policy of this State is that public entities shall be liable
for their negligence only as set forth in the Tort Claims Act.
*N.J.S.A.* 59:1–2. The general rule favoring the immunity of
public entities is set forth in *N.J.S.A.* 59:2–1, which provides:

> a. Except as otherwise provided by this act, a public entity is not liable for
> an injury, whether such injury arises out of an act or omission of the public
> entity or a public employee or any other person.
>
> b. Any liability of a public entity established by this act is subject to any
> immunity of the public entity and is subject to any defenses that would be
> available to the public entity if it were a private person.
>
> [Footnote omitted.]

As the Comment to that section states, courts should employ an
analysis that first asks *"whether an immunity applies and if
not, should liability attach."*

 Following that admonition, our initial inquiry is wheth-
er any immunity applies. In this regard, the State points to
*N.J.S.A.* 59:4–7, the "weather-immunity" provision of the Tort
Claims Act. Although we have not had the occasion to consider
the application of that provision, the Appellate Division has
considered the immunity in a series of cases. In *McGowan v.
Borough of Eatontown,* plaintiff alleged that ice on the road-

way caused him to lose control of his car. 151 *N.J.Super.* 440 (1977). The plaintiff's contention was that water accumulated on the highway because of improper drainage of a negligently constructed driveway adjoining the state highway. *Id.* at 443. In support of that allegation, the plaintiff presented evidence that the State had prior actual knowledge of icy accumulations at that location on the highway. *Id.* at 444–45. In that setting, the Appellate Division refused to apply the weather-immunity provision to bar plaintiff's suit. The court held that if the weather combined with another cause, such as negligent maintenance of the highway and improper approval of construction of the driveway, the weather immunity would not apply. The reason is that the weather would not be the sole cause of the accident. *Id.* at 447.

Similarly, in the month following that decision, another part of the Appellate Division ruled that plaintiff's claim should survive the State's motion for summary judgment because the plaintiff had presented evidence that her injuries were not caused solely by the weather. *Meta v. Township of Cherry Hill*, 152 *N.J.Super.* 228, certif. denied, 75 *N.J.* 587 (1977). In *Meta*, a ditch on the side of the roadway was filled with silt and vegetation with the result that water spilled onto the paved portion of the highway, where it froze and created a slippery condition. *Id.* at 231. Plaintiff established that the township and county had actual knowledge of the condition on the day of her accident and prior knowledge of other accidents at the same location. *Id.* at 231, 233–34. From this, the Appellate Division concluded that her injuries were not caused solely by the weather, but by the failure of the township and county to act reasonably to alleviate or to warn of the dangerous condition. *Id.* at 234.

More recently, in *Horan v. State*, 212 *N.J.Super.* 132 (1986), the Appellate Division held that the State and municipality could not be held liable for their failure to warn the traveling public that a bridge froze before adjacent roadways. The reason is that the condition, dangerous as it was, occurred only

due to weather conditions. The court rejected the plaintiff's argument that the injury was caused not solely by the weather, but by a combination of the weather and the failure of the defendants to warn of the danger. In rejecting the plaintiff's contention, the court stated that if this argument was "thought to be sound, the weather immunity statute would, in effect, be written out of the books." *Id.* at 134. Citing to *McGowan* and *Meta*, the court refused "to equate a failure to warn of the existence of a dangerous condition with the contribution to that condition that a filled ditch or a constructed driveway might make." *Ibid.* From this, we glean that under the Tort Claims Act the State may be liable for the failure to correct a known pre-existing dangerous condition unrelated to the weather, but that it is immune from liability for such a condition caused solely by weather.

We reject plaintiff's argument that the State should be deprived of the immunity because of the foreman's statement that "he would handle" the icy conditions. Although the parties disagree on the adequacy of the State's response, they are in accord that the State did nothing to increase the danger of the ice in its natural condition. Indeed, plaintiff vigorously asserts that the State did no salting or sanding at the site of the accident. We are left with the inescapable fact that the sole cause of the accident was the icy condition in its natural state. Imposition of liability in this context would undermine the policy judgment made by the Legislature that a public entity should be immune for an injury caused solely by the effect on the use of a highway of weather conditions. *N.J.S.A.* 59:4-7.

The imposition of liability on the State for the failure of one of its employees to respond to a telephone call would provide the wrong incentive for the allocation of State resources. With its limited resources, the State, like other public entities, cannot be everywhere at once in a snow or ice storm. A governmental entity should respond to those conditions as it perceives them, and not merely in the order in which it receives complaints. Nor should the fear of potential liability determine the treat-

ment of weather conditions. *Rochinsky, supra,* 110 *N.J.* at 412–13. Snow and ice are common enemies of government, motorists, and pedestrians. *See Miehl v. Darpino,* 53 *N.J.* 49, 53 (1968). Motorists and pedestrians who venture into snow and ice storms will inevitably confront risks not experienced by those who remain indoors.

The Legislature has determined that as between the public entity and the injured pedestrian or motorist, the entity is not to bear the cost of those risks. Implicit in that determination is the value judgment that the cost of the risk is to be borne directly or indirectly by the injured party, not by taxpayers. If the public entity should aggravate the risk or fail to give an adequate warning of a palpably dangerous condition that it has created, then it may be liable. A governmental entity enjoys common-law immunity for routine, anticipated dangerous conditions that result from snow removal. That immunity, however, may be lost for the "palpably unreasonable failure to warn of a dangerous condition * * *." *Rochinsky, supra,* 110 *N.J.* at 415 n. 7. In the present case, we need not consider the application of common-law immunity because the statutory weather immunity provided by *N.J.S.A.* 59:4–7 so clearly applies.

■ Although a public entity is generally liable for the ordinary negligence of its employees in performance of ministerial duties, *N.J.S.A.* 59:2–2; *N.J.S.A.* 59:2–3d, that liability yields to a grant of immunity. *See Malloy v. State,* 76 *N.J.* 515, 520–21 (1978) (immunity under *N.J.S.A.* 59:2–5 for licensing functions of the State applies to both discretionary and ministerial acts of State employees); *see also Wuethrich v. Delia,* 155 *N.J.Super.* 324, 326 (App.Div.) (immunity under *N.J.S.A.* 59:5–4 and –5 for failure to provide for police protection and to make an arrest, is not diminished by *N.J.S.A.* 59:2–2 and 59:2–3), certif. denied, 77 *N.J.* 486 (1978); *Bosch v. Hain,* 184 *N.J.Super.* 204, 211 (Law Div.1982) (*N.J.S.A.* 59:2–6, which provides immunity for failure to inspect public property, "is not limited solely to discretionary acts"). The defect in the Appellate Division's

analysis in the present case is its failure to recognize the statutory mandate that "any immunity provisions in the act or by common law will prevail over the liability sections." *N.J.S.A.* 59:2-1, comment. In the absence of the public entity's independent negligence, the weather immunity provided in *N.J. S.A.* 59:4-7 trumps liability predicated on ordinary negligence under *N.J.S.A.* 59:2-2.

■ The Appellate Division also erred in holding that the State might be vicariously liable under a standard of ordinary negligence for Avino's failure to treat the icy condition. In finding that holding to be erroneous, we recognize that *N.J.S.A.* 59:3-1a states: "Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person." We also recognize that a public entity is liable for the "act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual in like circumstances." *N.J.S.A.* 59:2-2a.

The liability of the employee, *N.J.S.A.* 59:3-1a, as well as the vicarious liability of his or her employer, *N.J.S.A.* 59:2-2a, is subject to other provisions of the act. One such provision, *N.J.S.A.* 59:4-2, specifically treats the liability of a public entity for a dangerous condition on its property. This section imposes liability on a public entity for such a condition when it was created by the negligence of an employee acting within the scope of his or her employment, provided the negligence was "palpably unreasonable." In effect, the statute immunizes a public entity from liability for a dangerous condition when its negligence "was not palpably unreasonable." We conclude that even if the weather immunity did not apply, plaintiff's claim should have been evaluated not by the standard of ordinary negligence, as the Appellate Division evaluated it, but by the standard of palpably unreasonable conduct of *N.J.S.A.* 59:4-2.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for the entry of judgment in favor of the State.

CLIFFORD, J., concurring.

The Society for the Preservation of Linguistic Hygiene should come to the rescue of the so-called "weather immunity" statute. In enacting *N.J.S.A.* 59:4-7 the legislature resorted to particularly unfortunate language. Containing only one sentence of twenty-eight words, the statute relieves a public entity of liability for "an injury caused solely by the effect * * * of weather conditions." It seems to me that the statute does no more than state the obvious, for if the injury results *solely* and *exclusively* from weather conditions, there could be no actionable claim against anyone. That is the old "act of God" defense.

Although I join entirely in the opinion of the Court, I think we would do well to take a stand against verbal pollution, particularly by avoiding the label of "weather immunity." The statute does not confer immunity, for there is no liability to immunize against if a claimant's injuries find their cause *solely* in the weather conditions. I suppose what is meant is that there is no duty to clean up those conditions of streets and highways that are produced by storms and the like, and I suppose too that the Court is correct in reading some sense into the statute. And I suppose, finally, that this little legislative lapse is not worth losing much sleep over. But I do wish someone would clean up the act.

*For reversal and remandment*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

*Concurring in result*—Justice CLIFFORD—1.