608 A.2d 254

ROBERT G. WEISS, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ELIZABETH ANN WEISS, AND GUARDIAN OF THE INFANT, HEATHER WEISS, PLAINTIFF–RESPONDENT, v. NEW JERSEY TRANSIT, NEW JERSEY RAIL OPERATIONS, INC. AND NEW JERSEY DEPARTMENT OF TRANSPORTATION, AND CONRAIL, INC., DEFENDANTS–APPELLANTS, AND THE COUNTY OF UNION, A.C. BRADNER, INC., JOHN DOE 1–25 FICTITIOUS CORPORATE, GOVERNMENTAL AND OTHER ENTITIES, DEFENDANTS.

BOROUGH OF NEW PROVIDENCE, DEFENDANT AND THIRD–PARTY PLAINTIFF–APPELLANT, v. JERSEY CENTRAL POWER & LIGHT COMPANY, THIRD–PARTY DEFENDANT.

Argued November 4, 1991—Decided June 29, 1992.

*Jack M. Sabatino,* Assistant Attorney General, argued the cause for appellant New Jersey Department of Transportation and Conrail, Inc. (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney, *Michael R. Clancy,* Former Assistant Attorney General, of counsel, *John M. Armstrong,* Deputy Attorney General, on the briefs).

*Thomas J. Kelly, Jr.,* argued the cause for appellant Borough of New Providence (*Hurley & Vasios,* attorneys).

*Edward J. Seaver* argued the cause for appellant New Jersey Transit Rail Operators, Inc. (formerly known as New Jersey Transit and New Jersey Rail Operations, Inc.) (*Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello,* attorneys; *Edward J. Seaver* and *Steven Firkser,* on the brief).

*Henry R. Simon* argued the cause for respondent.

The opinion of the Court was delivered by

O'HERN, J.

Once again we are required to resolve the proper relationship between the liability and immunity provisions of the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3. The facts of this case are set forth in the reported decision of the Appellate Division. 245 *N.J.Super.* 265, 584 *A.*2d 1359 (1991). We recite only those essential to our decision.

But eleven days before the traffic light at a notoriously dangerous railroad crossing became operational, plaintiff's decedent lost her life when a train struck her car as it crossed the tracks. Her survivors sued, claiming that the dangerous condition of the property under *N.J.S.A.* 59:4–2, the failure to provide emergency warning signals under *N.J.S.A.* 59:4–4, and defendants' failure to act reasonably when undertaking to cure a known danger had caused her fatal injury. The public bodies defended by relying on the legislative grant of immunity for failure to place a traffic signal under *N.J.S.A.* 59:4–5 and plan or design immunity under *N.J.S.A.* 59:4–6. The Law Division agreed with the public bodies and dismissed the plaintiff's complaint.

On appeal, the Appellate Division reversed, holding that the immunity under *N.J.S.A.* 59:4–5 did not apply because the true cause of the dangerous condition was not the absence of the traffic light but rather the independent negligence of the public bodies in delaying the implementation of a plan to install the traffic signal. The panel found that the design and plan immunity did not apply to this case because that immunity applied to the original plan or design, not the plan for the improvement. 245 *N.J.Super.* at 273, 584 *A.*2d 1359. The Appellate Division emphasized what it described as a "tortuous [eight-year] history of bureaucratic red-tape." 245 *N.J.Super.* at 270, 584 *A.*2d 1359. The argument has a powerful logic. Surely were it not for the delay, Elizabeth Ann Weiss would not have tragically died at this grade crossing. But the argument

has the same logic as many other claimed exceptions to the Act's immunity provisions.

■ To state the principles applicable to such an action is easy. *See Rochinsky v. State,* 110 *N.J.* 399, 541 *A.*2d 1029 (1988). The Court is frequently divided when it comes to their application because to pin down the concept of causation in law is so difficult. *See, e.g., Troth v. State,* 117 *N.J.* 258, 566 *A.*2d 515 (1989) (did the legislative immunity with respect to the maintenance of natural lands take precedence over the statutory liability for a defective condition of a man-made dam?); *Kolitch v. Lindedahl,* 100 *N.J.* 485, 497 *A.*2d 183 (1985) (did the legislative immunity for establishing a speed limit take precedence over a negligent failure to warn of dangerous curve in the road?). At first glance, the cases might appear to be inconsistent, allowing a cause of action in *Troth,* but not in *Kolitch* or *Rochinsky.* In fact, each case involves a search for a unifying principle—to identify the cause of the accident, *e.g.,* in *Troth,* was it the flowing waters or the artificial structure that caused the injury, and to ask if that identified cause or condition is one that the Legislature intended to immunize.

It is appealing to think that the true cause of this accident was the bureaucratic delay and not the absence of a traffic signal. Had the light been operational eleven days earlier, Elizabeth Ann Weiss almost certainly would be with us today. But the injured motorist in *Pico v. State,* 116 *N.J.* 55, 560 *A.*2d 1193 (1989), would not have been injured either had State employees sanded the roadway five minutes before she was struck by a skidding car. That failure also could be considered bureaucratic delay. If the immunities granted under the Act were found to be inapplicable because of a delay in effectuating the governmental actions involved, there would be little left to the immunities granted by the Act. In the context of other immunities, courts have recognized that the liability provisions of the Act will not take precedence over specifically granted immunities.

For example, in *Henschke v. Borough of Clayton*, 251 *N.J.Super.* 393, 598 *A.*2d 526 (App.Div.1991), municipal police officers negligently failed to investigate the theft of articles from plaintiff's home and "whitewashed" the matter, causing the loss of his personal effects. *Id.* at 397, 598 *A.*2d 526. However, the court found that the negligence of the police officers established under *N.J.S.A.* 59:2–2 and –3 did not diminish the legislative immunity granted to the municipality "for failure to provide police protection," under *N.J.S.A.* 59:5–4. *Id.* at 400, 598 *A.*2d 526. *See also Lee v. Doe*, 232 *N.J.Super.* 569, 581, 557 *A.*2d 1045 (App.Div.1989) (police officers who failed to respond to claims of wrongdoing by plaintiff who was subsequently shot by wrongdoer were immune from liability under *N.J.S.A.* 59:5–5); *Wuethrich v. Delia*, 155 *N.J.Super.* 324, 326, 382 *A.*2d 929 (App.Div.) (general provision for vicarious liability of public entity for negligent acts of employee did not diminish "explicit grant of immunity contained in *N.J.S.A.* 59:5–4 and *N.J.S.A.* 59:5–5" with respect to failure to provide public protection or failure to make arrest), *certif. denied*, 77 *N.J.* 486, 391 *A.*2d 500 (1978) (*Wuethrich* II).[1]

In *Bombace v. City of Newark*, 125 *N.J.* 361, 593 *A.*2d 335 (1991), we followed that approach of recognizing the precedence of specific immunity provisions. There we held that the ordinary negligence of a municipal official in terminating a legal proceeding to prosecute housing violations did not diminish the explicit grant of immunity contained in the Act for failure to enforce the law. *Id.* at 373–74, 593 *A.*2d 335. That approach is consistent with the principle of *Rochinsky, supra,* 110 *N.J.* 399, 541 *A.*2d 1029 that "when one of the Act's provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity."

---

[1] *But see Shore v. Housing Auth. of Harrison*, 208 *N.J.Super.* 348, 352–53, 506 *A.2d* 16 (App.Div.1986) (court refused to accept defendant's argument that "'goofing off' while on the job is tantamount to failure to provide sufficient police protection in the terms of *N.J.S.A.* 59:5–4").

*Id.* at 408, 541 *A.*2d 1029. There, this Court reaffirmed that *N.J.S.A.* 59:2-1(b) " 'is intended to insure that any immunity provisions provided in the act *or by common law* will prevail over the liability provisions.' " *Ibid.* (quoting *Report of the Attorney General's Task Force on Sovereign Immunity*, cmt. on *N.J.S.A.* 59:2-1 (1972) (Task Force Comment)). Thus, even were we to believe that a cause of action might otherwise be stated for "administrative inaction" that is not "of a legislative or judicial nature," *N.J.S.A.* 59:2-3, the explicit grant of immunity for failure to provide traffic signals under *N.J.S.A.* 59:4-5, "will prevail over the liability provisions." *N.J.S.A.* 59:2-1 Task Force Comment.

Were there any other triable issue of independent negligence—for example, had the underbrush that obscured visibility at the crossing been on defendants' property and subject to their maintenance, or had there been any other condition of the property that caused the dangerous condition to exist, *e.g.,* a pothole of long duration, an oil spill on the roadway, or a broken traffic light, *Bergen v. Koppenal,* 52 *N.J.* 478, 246 *A.*2d 442 (1968), the complaint might have stated a cause of action. *Rochinsky, supra,* 110 *N.J.* at 416, 541 *A.*2d 1029 (weather immunity did not include "artificial creation of a snow bank that makes a highway impassable").

■ Plaintiff argues that the Tort Claims Act is meant to insulate only high-level policy decisions of government because only judicial review of such decisions implicates the separation-of-powers doctrine. *See Costa v. Josey,* 83 *N.J.* 49, 55–56, 415 *A.*2d 337 (1980) (citing *Fitzgerald v. Palmer,* 47 *N.J.* 106, 110, 219 *A.*2d 512 (1966), in which Chief Justice Weintraub admonished "[a]s to such matters [governmental policy decisions], the question is whether a judge or jury could review the policy or political decisions involved without in effect taking over the responsibility and power of those other branches" ). The plaintiff would have us divide the decision-making and implementation processes in assessing the traffic-signal immunity under

*N.J.S.A.* 59:4–5. However, the Task Force Comment to *N.J.S.A.* 59:4–5 refers to the analysis of this Court in *Hoy v. Capelli,* 48 *N.J.* 81, 222 *A.*2d 649 (1966). There the Court suggested that a public entity would be immune from liability whether the entity decided to eliminate the traffic light permanently or simply was delayed in reinstalling the light. *Id.* at 87, 222 *A.*2d 649.

The failure to send out the road sanders in *Pico, supra,* 116 *N.J.* 55, 560 *A.*2d 1193, might also have been classified as a low-level administrative decision rather than a "political decision," but we found that the express immunity for weather conditions prevailed over the negligent delay in dispatching the sanders. We have been adjured by the framers of the Tort Claims Act that we should approach these cases from the perspective that immunity is the dominant theme of the Act.

> In the absence of a comprehensive statute the New Jersey Supreme Court ha[d] developed the analytical approach that courts "ought not to be ... asking why immunity should not apply in a given situation but rather ... asking whether there is any reason why it should apply." *B.W. King, Inc. v. West New York,* 49 N.J. 318, 325, 230 A.2d 133 (1967). This approach is no longer necessary in light of this comprehensive Tort Claims Act. Rather the approach should be *whether an immunity applies and if not, should liability attach.* It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities. [*N.J.S.A.* 59:2–1 Task Force Comment.]

In this case, because an immunity applies, liability does not attach.

■ Plaintiff also argued that the public entities are liable under *N.J.S.A.* 59:4–4 for failure to provide "emergency" devices needed to warn of a dangerous condition harmful to the safe movement of traffic that would not be apparent to one using due care. We are unable to agree. That exception applies to conditions that are "sudden, unexpected [or] emergent." *Spin Co. v. Maryland Casualty Co.,* 136 *N.J.Super.* 520, 524, 347 *A.*2d 20 (Law Div.1975). Thus, in *McGowan v. Borough of Eatontown,* 151 *N.J.Super.* 440, 450, 376 *A.*2d 1327 (App.Div.1977), the unexpected presence of an artificially-induced icing condition warranted an emergency warning. In

this case the danger was endemic, not emergent. All existing systems but for the traffic controls were operational, the cross-bucks were in place, red warning lights were flashing, road markings were in view, and the intersection was heavily traveled. Whatever flaws may have existed were not sudden, unexpected, or emergent. Even the "death trap" in *Kolitch* could not be regarded as an emergency that would necessitate the placement of warnings signals. 100 *N.J.* at 497, 497 *A.*2d 183.

■ Because the fundamental thesis of plaintiff's case is that the delay in implementing the policy-level decision of the Commissioner erases immunization for failure to post a traffic signal, we do not address the complex issue of whether partial plan and design immunity was afforded to certain defendants for features of the new plan that were subject to their control and in place. For example, New Jersey Transit Rail Operations (incorrectly denominated as New Jersey Rail Operations) asserts that all that it could do had been done, *e.g.*, new cross-bucks and flashers were in place and operational, but that DOT and the municipality had exclusive control of the traffic signals. We believe it best to view the matter as the Appellate Division did—that this was not yet an operational plan. Thus, although we agree with our dissenting members that in order to avail itself of the plan or design immunity under *N.J.S.A.* 59:4-6, the public entity must demonstrate that the specific design or plan detail alleged to constitute the dangerous condition was itself the subject of prior approval or prior approved standards, see *Thompson v. Newark Housing Authority*, 108 *N.J.* 525, 534, 537, 531 *A.*2d 734 (1987) (no evidence that original plans addressed the issue of fire safety), the difference in this case is that the failure to provide the traffic light has been specifically immunized by *N.J.S.A.* 59:4-5.

On the issue of holding the public entity accountable for delay in effectuating the installation of the traffic signal, we take account of our analogous policy with respect to the effect

of the passage of time on plan or design immunity. Thus, although we often look to California for guidance in interpreting our Tort Claims Act, see *Fuchilla v. Layman*, 109 *N.J.* 319, 331, 537 *A.*2d 652 (1988), we do not do so here. Under California law (as under New York's common law), "the governmental entity may not, ostrich-like, hide its head in the blueprints, blithely ignoring the actual operation of the plan" and the developing dangerous condition of land. *Baldwin v. State*, 6 *Cal.*3d 424, 99 *Cal.Rptr.* 145, 151, 491 *P.*2d 1121, 1127 (1972) (citing *Weiss v. Fote*, 7 *N.Y.*2d 579, 200 *N.Y.S.*2d 409, 167 *N.E.*2d 63 (1960)). Whatever the merits of the analysis, for example, that "[n]o threat of undue interference with discretionary decision-making exists in this situation," *id.*, 99 *Cal. Rptr.* at 151, 491 *P.*2d at 1128, the *Baldwin* approach of legal accountability for delay in responding to changed circumstances affecting a plan or design "has been specifically rejected as unrealistic and inconsistent with the thesis of discretionary immunity." *N.J.S.A.* 59:4-6 Task Force Comment. "It is intended that the plan or design immunity provided in this section be perpetual." *Ibid.* One can debate the wisdom of the legislative policy choice; one cannot readily discount its implications when we consider imposing legal accountability for delay in the initial effectuation of governmental policy choices.

■ In speaking of the weather immunity in *Horan v. State*, 212 *N.J.Super.* 132, 514 *A.*2d 78 (App.Div.1986), Judge Fritz concluded his opinion with this simple yet precise summary: "[W]hen weather is the true culprit, government is immune." *Id.* at 136, 514 *A.*2d 78. So too here. When the absence of a traffic signal or the design of the crossing is the true culprit, government is immune. The tragic circumstances of this case that so strongly counsel the departure from the provisions of the Act may commend a legislative response. In the absence of such a response, we cannot find a cause of action stated under the Tort Claims Act.

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

HANDLER, J., dissenting.

In this railroad-crossing case, the Appellate Division reversed a grant of summary judgment on the ground that the public-entity defendants had not established immunity under *N.J.S.A.* 59:4–5 and 59:4–6. Being in substantial agreement with Judge Pressler's Appellate Division opinion, 245 *N.J.Super.* 265, 584 *A.*2d 1359 (1991), I dissent.

. I

Elizabeth Anne Weiss died on December 29, 1986, when her car was struck by a train passing through a prominent intersection in the Borough of New Providence. On that date the intersection was equipped with automatic crossing guards that would have saved her life had they been operational. The summary judgment record before us suggests that Ms. Weiss was not "struck by lightning," nor were the accident and tragic loss of her life unavoidable and acceptable based on a reasonable cost-benefit tradeoff; the record contains ample evidence to support the conclusion that her death was the predictable result of almost a decade of delay in constructing a simple, federally-funded safety system that had been designed and approved by the State's highest transportation policy makers.

Residents of New Providence had known since the late 1970s that the railroad crossing, which was marked solely with partially obscured warning signs, flashing lights and bells, posed an immediate hazard to drivers. In April 1978, responding to two car-train accidents, the Borough passed a resolution petitioning the Department of Transportation (DOT) to install "appropriate safety devices" at the crossing. A DOT hearing examiner heard public testimony, evaluated the site, and agreed with the Borough. The examiner found that car-to-train sight distances were poor due to obstructions; that trees, utility

poles and street signs obscured the existing warning system; and that the volume of both car and train traffic was relatively high. Based on that confluence of hazardous conditions, the examiner recommended substantial upgrading of the warning system.

Five months later, in March 1979, the DOT Commissioner accepted the upgrading plan proposed by the hearing examiner and ordered that the Borough and Conrail construct it promptly. The plan was to be financed with already allocated federal funds made available under the Federal Aid Rail–Highway Safety Program. Although the policy decision was made, the plans drawn up and approved, the funds allocated, and a schedule set, construction, which was scheduled to take roughly six weeks, did not begin for another seven-and-a-half years. In the interim time slipped by in what the Appellate Division characterized as "a tortuous history of bureaucratic red-tape, desultory foot dragging, and a lack of intensity which is truly breathtaking." 245 *N.J.Super.* at 270, 584 *A.*2d 1359. Construction was completed on December 15, 1986, two weeks *before* Elizabeth Weiss was killed, but no one from DOT had inspected the system so it had not yet been placed into operation at the time of the accident. The gates began to function when trains approached in early January, only days after the fatal accident.

A majority of this Court would reverse the Appellate Division judgment. Viewing the absence of ordinary traffic signals and the original design of the railroad crossing as the true causes of the accident, the majority finds the public-entity defendants entirely immune from suit. In reaching that result the majority emphasizes the need to interpret the immunity provisions of the Tort Claims Act broadly when they conflict with the Act's liability provisions.

## II

Disputes concerning the application of the State Tort Claims Act inevitably involve questions regarding which immunity and

liability provisions best fit the facts of the case. Deciding which provisions best apply requires careful consideration of the factors that potentially caused the accident as well as the purpose underlying the relevant provisions. Here the defendants argued that they were immune from suit based on two provisions of the Tort Claims Act: *N.J.S.A.* 59:4–6 (plan or design immunity) and 59:4–5 (immunity for failure to provide ordinary traffic signals).

In reviewing the record in the case the Appellate Division emphasized that no evidence suggested that the original system of signs, lights and bells was the product of a specific "plan or design ... approved in advance by ... the governing body of a public entity." *N.J.S.A.* 59:4–6. To gain benefit of the plan or design immunity in the Tort Claims Act, the State must show that a decision was actually made to include or omit the feature found to have been the cause of the accident. *Thompson v. Newark Hous. Auth.*, 108 *N.J.* 525, 534, 531 *A.*2d 734 (1987); *Birchwood Lakes Colony Club v. Medford Lakes*, 90 *N.J.* 582, 599–600, 449 *A.*2d 472 (1982). In the absence of evidence demonstrating that the original, and ultimately inadequate, warning system was the product of a governmental decision, the Appellate Division was surely correct in finding plan or design immunity to be inapplicable.

However, even if defendants were able to prove that the initial warning system was instituted pursuant to a governmental decision, the plan or design immunity would still not govern this case. That immunity was included in the New Jersey Tort Claims Act in order to protect the integrity of administrative policy making. *Thompson v. Newark Hous. Auth.*, *supra*, 108 *N.J.* at 534, 531 *A.*2d 734. Before the passage of the Tort Claims Act this Court indicated that it could not hold the State liable for the results of policy decisions because to do so would replace the judgments of elected officials with those of judges and juries:

> If the government does act, then, when it acts in a manner short of ordinary prudence, liability could be judged as in the case of a private party. So if a

road were constructed of a design imperiling the user, the issue of fault would present no novel problem. But whether a road should have four or six or eight lanes, or there should be dividers, or circles or jughandles for turns, or traffic lights, or traffic policemen, or a speed limit of 50 or 60 miles per hour—such matters involve discretion and revenue and are committed to the judgement of the legislative and executive branches. As to such matters, the question is whether a judge or jury could review the policy of political decisions involved without in effect taking over the responsibility and power of those other branches. [*Fitzgerald v. Palmer*, 47 *N.J.* 106, 109–10, 219 *A*.2d 512 (1966).]

The Legislature's decision to include a complete immunity for injuries caused by the plan or design of public property was based on *Fitzgerald* and the separation of powers concerns it raised. The authors of the immunity provision explained that it was "prompted by the fact that approval of plans or designs is peculiarly a function of the executive or legislative branch of government." Legislative Comments to *N.J.S.A.* 59:4–6. The desired effect of the immunity is to prevent courts from second-guessing the planning and design decisions of public entities. *Ibid.; see also Hoy v. Capelli*, 48 *N.J.* 81, 89–90, 222 *A*.2d 649 (1966) ("To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations.") (quoting *Weiss v. Fote*, 7 *N.Y.*2d 579, 200 *N.Y.S.*2d 409, 413, 167 *N.E.*2d 63, 66 (1960).

To establish its plan or design immunity the State must prove that the injury was caused by a specific design feature that it actually approved. As the Court stated in a *Thompson*, "there is no second guessing unless the particular feature that causes the condition was in fact an 'approved feature of the plan.' " If the government entity acts negligently in constructing public property which otherwise would have been safe, no design or plan immunity applies. *Birchwood Lakes Colony Club v. Medford Lakes, supra*, 90 *N.J.* at 598, 449 *A*.2d 472 (public entity remains liable for negligent operation or construction); *Fitzgerald, supra*, 47 *N.J.* at 109, 219 *A*.2d 512. The critical question is not whether design and plan work was involved but whether the design itself was the cause of the accident.

In this case, although planning and design work were involved in the circumstances leading up to the Elizabeth Weiss' death, to say that her death was caused by a feature of an approved plan or design strains reason. Even had the initial warning system been approved in the past by a governmental entity, it had long been repudiated and replaced by those entities by the time that she entered the intersection. *Cf. Costa v. Josey*, 83 *N.J.* 49, 63, 415 *A.*2d 337 (1980) (Clifford, J., dissenting) (arguing that immunity applied where accident was caused by an improvement to public property *approved* by a public entity) (emphasis added). To find that the lack of additional devices warning of oncoming trains was hazardous would involve no second guessing of the Department of Transportation or the other defendants. The high-level planning decision meant to be protected by *N.J.S.A.* 59:4-6 was that added safety devices were needed to protect the public from a hazardous road condition. The Appellate Division not only honors that planning decision, it relies on it. The only governmental conduct that is being "second guessed" is that involved in the decade-long delay in implementing the planning decision.

At the time of the accident the approved design was in place; all that remained was to start up the gate system. There is no claim that that design was inadequate because it failed to protect against a particular danger. If that were the case, the plan or design immunity would apply. Here, the accident was caused not by a flaw in the design, which was complete by 1979, although later modified, but by the inordinate delay in effectuating the design. *See Costa v. Josey, supra,* 83 *N.J.* at 59–60, 415 *A.*2d 337 (operational determinations not protected by discretionary or design immunities). An unreasonable delay in implementation is of the same character as affirmative negligence in implementation. *Birchwood Lakes Colony Club, supra,* 90 *N.J.* at 599, 449 *A.*2d 472. No evidence in the record suggests any decision to delay the implementation of the system for seven-and-a-half years. Indeed, the decision by DOT to construct a new safety system was itself accompanied by a

timeline. The Appellate Division was correct in concluding that the accident resulted not from the plan itself but from the implementation of that plan.

The public-entity defendants also rely on the ordinary-traffic signals immunity. *N.J.S.A.* 59:4-5. Like the plan or design immunity, the immunity for failure to provide ordinary traffic signals is designed to protect the decisions made by public entities from court review. In *Hoy v. Capelli, supra,* 48 *N.J.* 81, 222 *A.*2d 649, the common-law case on which that immunity was based, the Court emphasized that what was protected from judicial scrutiny was "a governmental *determination* to install or not to install traffic control devices." *Ibid.* at 91, 222 *A.*2d 649 (emphasis added). "Our courts have continued to emphasize that the subject of the immunity intended by 59:4-5 is the public entity's exercise of planning-level discretion respecting traffic control devices." *Weiss v. New Jersey Transit,* 245 *N.J.Super.* at 274, 584 *A.*2d 1359; *see also Aebi v. Monmouth County Highway Dep't,* 148 *N.J.Super.* 430, 433, 372 *A.*2d 1130 (App.Div.1977) ("*N.J.S.A.* 59:4-5 simply specifies one particular type of discretionary activity to which immunity applies.").

As in the case of the plan or design immunity, the ordinary traffic signal immunity does not apply when the accident arises not as a result of making or not making a determination but rather as a result of the failure to implement a determination. *Shuttleworth v. Conti Constr. Co., Inc.* 193 *N.J.Super.* 469, 473, 475 *A.*2d 48 (App.Div.1984) (liability determined by *N.J.S.A.* 59:4-2 after discretionary decision has been made). In both cases the cause of the accident is the failure to carry out "ministerial" actions. Given that the Tort Claims Act abolished the well worn distinction between acts and omissions, there is no reason why the failure to carry out a ministerial function or an extreme delay in doing so should be treated any differently from affirmative negligence that occurs in the course of carrying out such a decision. As Judge Pressler wrote below:

> Obviously, we are dealing here with the maintenance of a known dangerous condition long after the discretionary decision was made to upgrade the

warning system for a hazardous railroad crossing. More significantly, the discretionary decision was made on a high governmental level by the Commissioner of DOT. There was absolutely nothing discretionary in the obligation of the borough, the railroad, and DOT staff to comply with the Commissioner's remedial order of March 1979. Insofar as these public agencies and entities are concerned, the provision of the upgraded warning system from that time forward was not optional. It was mandatory. [245 *N.J.Super.* at 275, 584 *A.*2d 1359.]

Defendants cannot benefit from the immunity that ordinarily protects planning decisions regarding traffic signals because the decision was to install the additional safety devices that may have prevented the accident from happening. Moreover, the condition of the intersection at the time of the accident, characterized by an essential but not-yet-operating safety system resembled a "trap." Legislative Comment to *N.J.S.A.* 59:4–4. The legislative comments state that "liability may exist for failure on the part of a public entity to provide an emergency warning signal or device when a condition exists constituting a 'trap' to a person using a street or highway with due care." The liability provision is directed toward situations that pose "an unusual risk of injury" to such persons. *Bergen v. Koppenal, et al., supra,* 52 *N.J.* at 480, 246 *A.*2d 442. I would not reach the question of whether the defendants might be liable under *N.J.S.A.* 59:4–4 for failure to provide emergency signals warning drivers of the hazardous nature of the crossing. Nonetheless, it is useful to note that in a situation such as this one the danger to the public may have been sufficiently serious and unavoidable to warrant liability under 59:4–4. Moreover, the defendants may well have had a duty to post warning signs notifying drivers of the inherent danger during the construction period. *McGowan v. Borough of Eatontown,* 151 *N.J.Super.* 440, 376 *A.*2d 1327 (App.Div.1977) (recurrent nature of hazardous condition did not preclude liability under *N.J.S.A.* 59:4–4).

Whether the delay was sufficiently extensive to establish that the defendants acted unreasonably in implementing the new safety plan is an issue that should be decided by a jury. Public entities owe those using public streets and other public property a duty of care that is more limited than that owed by private

property owners. *Williams v. Phillipsburg*, 171 *N.J.Super.* 278, 285, 408 *A.*2d 827 (App.Div.1979). Public entities are held liable only if the policy or discretionary determinations they make with regard to protecting the public from hazardous conditions are found to have been palpably unreasonable. *N.J.S.A.* 59:4–2. *See Chatman v. Hall*, 128 *N.J.* 394, 608 *A.*2d 263 (1992). The liability provision of 59:4–2 recognizes that responding to dangerous conditions necessarily involves some discretionary decision making. *See* Legislative Comment *N.J.S.A.* 59:4–2 ("when a public entity exercises or fails to exercise its discretion in determining what actions should or should not be taken"). However, because policy making and resource allocation are only partially involved, the immunity provided is not absolute, as it is in the case of accidents that result from conditions planned and designed by public entities.

Similarly, public entities have a partial immunity when they can demonstrate that an accident resulted from an exercise of discretion in the face of competing demands. *N.J.S.A.* 59:2–3. The public entity defendants therefore may defend themselves on the basis that they made reasonable decisions about the allocation of resources that resulted in the long delay in implementing the safety plan. In *Brown v. Brown*, 86 *N.J.* 565, 432 *A.*2d 493 (1981) the Court considered delay in responding to a dangerous highway condition under the discretionary action provision of the Tort Claims Act. As in this case, the defendants had known of the problem, had authorized an improvement project, but had then delayed its implementation. The Court reasoned that the public entity defendants were responsible for demonstrating that their "scheduling determination not to proceed sooner with the project was [not] palpably unreasonable." *Id.* at 579, 432 *A.*2d 493. "It was the State's burden to demonstrate that the items given a higher priority were more critical." *Id.* at 578, 432 *A.*2d 493. Although the record displays a long chronology of bureaucratic steps taken prior to the accident, little explains why the DOT took so long to build the new safety devices. Nonetheless the question of

whether the defendants acted with palpable unreasonableness is one for a jury to determine. *Rochinsky v. State*, 110 *N.J.* 399, 410, 541 *A.*2d 1029 (1988).

## III

Because neither of the absolute immunities apply and the plaintiff has put forward substantial evidence that indicates that the defendant public entities acted unreasonably, the motion for summary judgment should have been denied.

Justice STEIN joins in this opinion.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN and GARIBALDI—5.

For affirmance—Justices HANDLER and STEIN—2.