688 A.2d 151

ENIA FARIAS, PLAINTIFF–APPELLANT, v. TOWNSHIP
OF WESTFIELD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 15, 1997—Decided February 13, 1997.

396

Before Judges SHEBELL and BAIME.

*Murray A. Klayman,* argued the cause, for appellant (*Ferdinand & Klayman, P.A.,* attorneys; *Mr. Klayman,* on the brief).

*Kelley Johnson,* argued the cause, for respondent (*King, Kitrick, Jackson & Troncone,* attorneys; *Mark G. Kitrick,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiff, Enia Farias, appeals the dismissal of her complaint against defendant, Township of Westfield ("Township"), on summary judgment. We affirm.

On October 24, 1994, plaintiff filed a complaint against the Township alleging that, as a result of defendant's negligence, she fell on property under the control of the Township and sustained serious injuries. The complaint also named several other defendants, including the County of Union ("County"), the State of New Jersey ("State"), New Jersey Transit ("NJT"), and Consolidated Rail Corp. ("Consolidated"). Motions for summary judgment by the County and Consolidated were unopposed and the complaint was dismissed as to those defendants. The State and NJT settled with plaintiff and a Stipulation of Dismissal was filed as to those

defendants. The Township moved for summary judgment on or about September 27, 1995. Plaintiff opposed the motion and oral argument was heard after which an order of dismissal was entered. Plaintiff's motion for reconsideration was denied.

On February 8, 1994, plaintiff, while walking under the train trestle located at Park Plaza in Westfield, slipped and fell on accumulated ice that was concealed by a recent snowfall. She suffered a severe fracture in her left ankle resulting in a permanent injury. Plaintiff asserts that the dangerous condition was created in part by the Township's failure to provide a warning of the hazardous condition and failure to maintain the premises in a safe manner. Plaintiff urges that the icy conditions were not created solely by the weather, but rather by an artificial condition that allowed runoff and melting ice or snow to accumulate in a pool on the sidewalk.

A professional engineer conducted an investigation of the accident site on plaintiff's behalf. He found that due to a defect in the construction of the sidewalk, there was a propensity for puddles to form, which would turn to ice during the winter months. He reported that "[t]he persons responsible for the maintenance of the area knew of or should have foreseen the propensity for ice to form in the area," and that the failure to remedy this condition was palpably unreasonable.

The road abutting the sidewalk where plaintiff fell is owned by the State, as is the railroad trestle that is located above the sidewalk. A NJT employee admitted that NJT was aware of the runoff from the train tracks onto the sidewalk below the trestle, that NJT was responsible for the maintenance of this area, and that nothing was done to correct the problem.

The Township's Superintendent of Public Works and Maintenance testified that one of his responsibilities was to oversee the streets, roads and parks, including sidewalks of the Township. The Plaza was considered a Township park area, however, the Superintendent testified that the sidewalk under the train trestle was under the control of the State, while the sidewalk approaching

the trestle from either side was under Township control. He also testified that the State replaced the sidewalk under the trestle, extending a short distance beyond it, about five (5) to ten (10) years prior to the accident. He maintained that the Township was not responsible for the maintenance of the sidewalk under the trestle, including salting, sanding or plowing and that he did not assign any supervisor to perform any such work in February 1994. He would, however, assign Township employees to sand or salt the sidewalks north and south of the train trestle. He conceded that Township employees might clear the sidewalk under the trestle to get to the sidewalk on the other side, but he was not aware of any specific times this occurred. He was not aware of any runoff from the train tracks to the sidewalk under the trestle, nor did he ever inspect the sidewalk in that area. The Township Public Works Department placed trash cans on the sidewalk in the area of the trestle because of the high pedestrian traffic.

In 1972, the Legislature enacted the Tort Claims Act ("Act"), *N.J.S.A.* 59:1-1 to 5-5. Under the Act " 'the [court's] approach should be whether an immunity applies and if not, should liability attach.' " *Rochinsky v. New Jersey Dep't of Transp.*, 110 *N.J.* 399, 408, 541 *A.*2d 1029 (1988) (quoting *N.J.S.A.* 59:2-1 Task Force Comment.). The burden of proof for establishing immunity lies with the public entity. *Bligen v. Jersey City Hous. Auth.*, 131 *N.J.* 124, 128, 619 *A.*2d 575 (1993). In deciding if a public entity is immune, this court must "identify the culpable cause of the accident and [ ] ask if that 'identified cause or condition is one that the Legislature intended to immunize.' " *Levin v. County of Salem*, 133 *N.J.* 35, 43, 626 *A.*2d 1091 (1993) (quoting *Weiss v. New Jersey Transit*, 128 *N.J.* 376, 380, 608 *A.*2d 254 (1992)). On an appeal from a grant of summary judgment to the public entity, we should "accept as true plaintiff's version of the facts ... giving her the benefit of all inferences favorable to her claim." *Pico v. State*, 116 *N.J.* 55, 57, 560 *A.*2d 1193 (1989).

*N.J.S.A.* 59:4-7 establishes weather immunity for public entities as follows: "Neither a public entity nor a public employee

is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions." *Ibid.* The Supreme Court in *Pico, supra,* examined the application of the weather immunity provision contained in the Act. After exploring the cases where this court had applied or declined to apply weather immunity to a public entity, it concluded that a public entity "may be liable for the failure to correct a known pre-existing dangerous condition unrelated to the weather, but that it is immune from liability for such a condition caused solely by the weather," even where its failure to respond after actual notice is palpably unreasonable. *Pico, supra,* 116 *N.J.* at 58–61, 560 *A.*2d 1193.

In *Meta v. Township of Cherry Hill,* 152 *N.J.Super.* 228, 377 *A.*2d 934 (App.Div.), *certif. denied,* 75 *N.J.* 587, 384 *A.*2d 818 (1977) and *McGowan v. Borough of Eatontown,* 151 *N.J.Super.* 440, 376 *A.*2d 1327 (App.Div.1977), we refused to apply the statutory weather immunity to the public entities in question because weather conditions were not the sole basis for imposing liability. In *Meta, supra,* the dangerous condition was created by a ditch on the side of a County roadway running through the Township that was filled with silt and vegetation causing the water to overflow onto the roadway and freeze. *Meta, supra,* 152 *N.J.Super.* at 231, 377 *A.*2d 934. Both public entities had actual notice of the dangerously icy condition of the roadway and failed to act. *Ibid.* Liability was held to be available under *N.J.S.A.* 59:4–4 for failure to warn. *Id.* at 232–34, 377 *A.*2d 934.

Similarly, in *McGowan, supra,* we found that the icy condition was caused by runoff from a restaurant driveway onto a State highway, which due to the improper drainage of that water from the highway, froze during cold weather. *McGowan, supra,* 151 *N.J.Super.* at 445, 376 *A.*2d 1327. We held that the public entity could not be relieved of liability under the statutory weather immunity since the condition was not caused solely by the weather. *Id.* at 447, 376 *A.*2d 1327. Rather, the assertion of liability was premised on the improper granting of permits for the drive-

way and improper provision for drainage. *Ibid. see Pico, supra,* 116 *N.J.* at 60, 560 *A.*2d 1193.

By contrast, in *Horan v. State,* 212 *N.J.Super.* 132, 514 *A.*2d 78 (App.Div.1986), an automobile accident occurred when plaintiff's car skidded on an icy bridge. *Id.* at 133, 514 *A.*2d 78. We held the State was immune from liability because the dangerous condition was caused solely by the weather. *Id.* at 133–34, 136, 514 *A.*2d 78. While recognizing that the icy condition was in fact a dangerous one, there was not a "protagonist partner" or alternative basis for liability similar to that found in *Meta, supra,* and *McGowan, supra,* which served to negate the public entity's immunity. *Id.* at 134, 514 *A.*2d 78. Rather, the condition was created because the bridge froze before the actual roadway did, not because there was some improper accumulation of water on the roadway which froze when the weather turned cold. *Id.* at 133–34, 514 *A.*2d 78; *see Pico, supra,* 116 *N.J.* at 60–61, 560 *A.*2d 1193.

In the present case, it is critical that the "protagonist partner" or alternative cause of the fall is attributable to the State and not the Township. It is alleged that the sidewalk was not constructed properly by the State, thereby resulting in the accumulation of water. Viewed from the perspective of the Township's culpability, "the injury [was] caused solely by the effect on the use of [the sidewalk] [ ] of weather conditions." *N.J.S.A.* 59:4–7. This is because the claims against the Township, both as to its failure to remedy and to warn, have no foundation beyond the effect of weather conditions on the public way.

The Township is also entitled to the protection of common law snow removal immunity, as established in *Miehl v. Darpino,* 53 *N.J.* 49, 247 *A.*2d 878 (1968), and as held to continue to exist after the Act was adopted. *Rochinsky, supra,* 110 *N.J.* at 402, 541 *A.*2d 1029. The Supreme Court has observed that if liability were to be imposed on a public entity for injuries caused by its snow removal, it would be required to "broom sweep" the areas from which it removed snow. *Miehl, supra,* 53 *N.J.* at 53, 247 *A.*2d 878.

The *Miehl* Court went on to say that "[t]he high cost of such an undertaking could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program." *Id.* at 54, 247 *A.*2d 878. Therefore, since "[t]he public is greatly benefited even by snow removal which does not attain the acme of perfection of 'broom swept' streets," the Court held that a public entity will not be held liable for injuries arising from its snow removal activities. *Ibid.; see Amelchenko v. Freehold,* 42 *N.J.* 541, 201 *A.*2d 726 (1964); *Manca v. Borough of Hopatcong,* 157 *N.J.Super.* 67, 384 *A.*2d 543 (App. Div.), *certif. denied,* 77 *N.J.* 480, 391 *A.*2d 495 (1978).

■ Plaintiff states on appeal that she "has never claimed that the Township's negligence in failing to remove snow proximately caused her injury." She asserts that liability is premised on the Township's failure to salt and sand the area and that its failure to do so is palpably unreasonable conduct. We hold that salting and sanding fall under the umbrella of snow removal activities. These alleged failures to remediate cannot be sufficiently distinguished from snow removal to escape the application of snow removal immunity. We have no doubt that ice, even if hidden by a covering of snow, is among the kind of circumstances contemplated by the *Miehl* Court, when it stated: "[t]he unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time." *Miehl, supra,* 53 *N.J.* at 53, 247 *A.*2d 878.

Our Supreme Court in *Rochinsky, supra,* explained that a cause of action, "unrelated to snow removal activity," may be maintained under *N.J.S.A.* 59:4–4 if the conduct amounted to "palpably unreasonable failure to warn of a dangerous condition." *Rochinsky, supra,* 110 *N.J.* at 415 n. 7, 415–17, 541 *A.*2d 1029; *N.J.S.A.* 59:4–4. However, there is no evidence that the Township actually knew of the condition and blatantly ignored it. Further, it does not appear that a public entity can be held liable for failure to warn of a dangerous condition absent actual notice of the dangerous

condition, when the condition exists on the property of another. *See DeBonis v. Orange Quarry Co.*, 233 *N.J.Super.* 156, 171–73, 558 *A.*2d 474 (App.Div.1989).

Plaintiff also asserts that summary judgment was improper since she established a prima facie case under *N.J.S.A.* 59:4–2. In order to establish liability under *N.J.S.A.* 59:4–2, plaintiff must prove

> that the property was in a dangerous condition at the time of the injury; that the injury was proximately caused by the dangerous condition; that the dangerous condition created a reasonably foreseeable risk of the kind of injury that was incurred; and that a public employee created the dangerous condition or that the public entity had notice in time to protect against the condition itself.
>
> [*Kolitch v. Lindedahl*, 100 *N.J.* 485, 492, 497 *A.*2d 183 (1985).]

Liability under *N.J.S.A.* 59:4–2 pertains only to property owned or controlled by the public entity. As defined under *N.J.S.A.* 59:4–1, "public property" means "real or personal property owned or controlled by the public entity. . . ." *N.J.S.A.* 59:4–1c. State ownership of the sidewalk where plaintiff fell is beyond dispute, and in fact, the State had replaced the sidewalk previously. In *Ball v. New Jersey Bell Telephone Co.*, 207 *N.J.Super.* 100, 504 *A.*2d 29 (App.Div.), *certif. denied*, 104 *N.J.* 383, 517 A.2d 391 (1986), we stated that "[n]othing in the legislative history [of the Act] suggests that a public entity is liable for injuries sustained by virtue of a dangerous condition existing on the property of another." *Id.* at 107, 504 *A.*2d 29.

We reject plaintiff's claim that the Township controlled the area. Plaintiff's assertion of control is based on the fact that the Township may have removed snow in the past and had placed trash cans in this area. These incidental acts, offered to support plaintiff's assertion of control by the Township, are insufficient as a matter of law to establish control by the Township of this State-owned property. *Brill v. Guardian Life Ins. Co. of America*, 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995). In any event, the statutory weather immunity provided by *N.J.S.A.* 59:4–7 would clearly apply, and therefore, the issue of liability under *N.J.S.A.* 59:4–2 does not arise. *Pico, supra,* 116 *N.J.* at 62–63, 560 *A.*2d 1193.

Plaintiff's reliance on the New Jersey Administrative Code ("Code"), *N.J.A.C.* 16:38–1.1, in support of her argument that the Township had a duty to sand and salt the sidewalk fails to recognize that these provisions, even assuming they imposed a duty on the Township, cannot overcome the Township's weather and snow removal immunity. Moreover, on these facts, we are not persuaded that the Township is, in fact, an abutting landowner within the contemplation of the Code. In addition, the Township's failure to fulfill its duty under the Code can amount, at best, to no more than ordinary negligence, which is not sufficient to impose liability under *N.J.S.A.* 59:4–2, which requires that the failure to act be palpably unreasonable. *See Kolitch, supra,* 100 *N.J.* at 493, 497 *A.*2d 183.

Summary judgment is affirmed.